UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 06-23029-CIV-COOKE/BANDSTRA

RALPH IRWIN

    *Plaintiff*,

v.

MIAMI-DADE COUNTY PUBLIC
SCHOOLS, *et al.,*

    *Defendants*.

_____/

**ORDER DENYING DEFENDANTS McGOWAN AND ROIG'S MOTIONS TO DISMISS AND GRANTING THEIR MOTION FOR SUMMARY JUDGMENT**

This matter is before me on Defendant John McGowan's Motion to Dismiss Second Amended Complaint [D.E. 258], Gustavo Roig's Motion to Dismiss Second Amended Complaint [D.E. 251], and McGowan's and Roig's Motion for Summary Judgment [D.E. 449]. For the reasons stated below, the motions to dismiss are denied, but the motion for summary judgment is granted.

**I.   BACKGROUND**

*Pro se* Plaintiff Irwin filed his Second Amended Complaint [D.E. 192] on October 10, 2007, seeking, *inter alia*, damages and declaratory relief from Defendants John McGowan and Gustavo Roig. McGowan was Vice President of Human Resources at Florida International University. Roig was the Director of the Center for Diversity in Engineering and Computing at Florida International University. The Center has been responsible for procuring several grant-funded programs on a yearly basis, including the GEAR UP program. Because the Center runs several programs per year, Roig delegates his authority over the specific programs to Program Coordinators. The Program Coordinator for the GEAR UP program was Jorge Nosti. Irwin

worked for the GEAR UP program.

Irwin is filing suit for deprivation of rights and privileges under the First, Fifth, and Fourteenth Amendments. He contends that McGowan and Roig were both directly involved in the violation of his constitutional rights and allowed violations to occur by employees under their direction. Specifically, Irwin alleges that McGowan "did not ensure that his employees were adequately trained, supervised, controlled or disciplined in the execution of their official duties - in particular, to ensure that they respected the constitutional rights of citizens." (Second Amended Complaint ¶ 419). Irwin alleges that he filed suit against Roig because of "1) his direct participation, 2) his failure to remedy such wrongs, 3) his creation and/or maintenance of a policy or custom under which unconstitutional practices occur, and of course 4) his gross negligence in guidance, management and supervision of those who caused unconstitutional torts . . . ." (Second Amended Complaint ¶ 383).

McGowan and Roig are sued in both their individual and official capacities.[1] The claims are brought under 42 U.S.C. § 1983 and focus on the termination of Irwin's job and the Defendants' alleged acts and omissions in the handling of Irwin's discrimination complaints.

## II. LEGAL STANDARD

### A. Motion to Dismiss

"When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted." *Holtzman v. B/E Aerospace, Inc.*, No. 07-80511, 2008 WL 214715, at *1 (S.D. Fla. Jan.

---

[1] Although the counts against the Defendant indicates that he is being sued in the "individual" capacity, paragraph 65 of the Second Amended Complaint indicates that all non-Federal Defendants are being sued in their individual *and* official capacities. *Compare* Second Am. Compl., Count 35 *with* Second Am. Compl. ¶ 65.

24, 2008) (referring to a Motion to Dismiss filed under Rule 12(b)(6)) (citation omitted). The complaint may be dismissed if the facts as pled do not state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1968-69, 1974 (2007) (abrogating the old "unless it appears beyond a doubt that the plaintiff can prove no set of facts" standard and replacing it with a standard requiring "only enough facts to state a claim to relief that is plausible on its face."); *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1037 (11th Cir. 2001)("Pleadings must be something more than an ingenious academic exercise in the conceivable.") (en banc) (quoting *United States v. Students Challenging Regulatory Ag. Proc.*, 412 U.S. 669, 688 (1973)). More simply, dismissal is appropriate if the plaintiff has not "nudged [its] claims across the line from conceivable to plausible." *Twombly*, 127 S.Ct. at 1974. Additionally, *pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and must be liberally construed. *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003); see also *Faulk v. City of Orlando*, 731 F.2d 787, 789-90 (11th Cir.1984) ("A . . . *pro se* complaint 'however inartfully pleaded must be held to 'less stringent standards than formal pleadings drafted by lawyers'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)).

    B.  **Motion for Summary Judgment**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). According to the U.S. Supreme Court, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. . . [o]nly when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "'may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1984) (stating "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"). The Court, however, must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue of material fact remains. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). Furthermore, the court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1140 (11th Cir. 2007) (citing *Carlin Commc'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

### III. ANALYSIS

    A. **Motion to Dismiss**

A cause of action brought under § 1983 has two essential elements: (1) the conduct complained of must have been committed by a person acting under color of state law, and (2) the

conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or the laws of the United States. *Whitehorn v. Harrelson*, 758 F.2d 1416, 1419 (11th Cir. 1985) (emphasis added) (citing to 42 U.S.C. § 1983).

Qualified immunity protects government officials performing discretionary functions from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Galvez v. Bruce*, 552 F.3d 1238, 1241 (11th Cir. 2008). Qualified immunity is an entitlement not to stand trial under certain circumstances. *Mitchell v. Forsyth*, 472 U.S. 511, 525-28 (1985). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Id*. at 526. Thus, qualified immunity protects government actors in their individual capacities from civil claims against them.

In Counts 30 and 35, Irwin alleges that Roig and McGowan violated his rights under the First, Fifth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. (Second Amended Complaint at ¶ 422). McGowan's alleged constitutional violations stem from his oversight of FIU employee and co-defendant Bennie Osborne. (Second Amended Complaint ¶ 420). According to Irwin, McGowan knew of the unlawful actions of those under his direction and ratified the actions. (Second Amended Complaint ¶¶ 419, 420). He further claims that McGowan intended to cover up those unlawful actions. (Second Amended Complaint ¶ 424). With respect to Roig, Irwin alleges that Roig either knew of the unlawful actions of those under his direction and ratified the actions or should have known of the actions taken by those under his direction. (Second Amended Complaint ¶ 382). Irwin asserts that Roig failed to ensure that employees under his direction properly handled employment disputes. Specifically, he states that Roig "did not ensure his employees were adequately trained, supervised, controlled, or disciplined in the execution of their official duties. .

." (Second Amended Complaint ¶ 386). The plaintiff also contends that Roig was in a position to correct wrongs he suffered and failed to take appropriate action. (Second Amended Complaint ¶ 386). Irwin contends that, as a result, Roig demonstrated his "deliberate indifference to the constitutional rights of the public . . . ." (Second Amended Complaint ¶ 386).

In other words, Irwin appears to allege that McGowan and Roig violated clearly established constitutional rights. Given that *pro se* pleadings are to be construed liberally, the facts alleged, taken in the light most favorable to Irwin, appear to establish that McGowan and Roig violated Irwin's constitutional rights. Accordingly, a determination of whether McGowan and Roig are entitled to qualified immunity is premature at the motion to dismiss stage.

### B. Motion for Summary Judgment

McGowan and Roig are entitled to summary judgment under Rule 56(c). Irwin alleges §1983 violations under the First, Fifth, and Fourteenth Amendments. A cause of action brought under §1983 has two essential elements: (1) the conduct complained of must have been committed by a person acting under color of state law, and (2) the conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or the laws of the United States. *Whitehorn v. Harrelson*, 758 F.2d 1416, 1419 (11th Cir. 1985) (emphasis added) (citing to 42 U.S.C. § 1983).

Irwin's allegations, even if taken as true, do not bring a First Amendment claim. Irwin fails to assert a First Amendment violation because the speech he seeks to assert is not protected under the Constitution. The Eleventh Circuit has chosen to apply the *Bryson* test to determine whether speech is protected under the First Amendment. *Tindal v. Montgomery County Comm'n.*, 32 F.3d 1535, 1539-40 (11th Cir. 1994) (*citing Bryson v. City of Waycross*, 888 F.2d 1562, 1565-66 (11th Cir. 1989)); *see also Badia v. City of Miami*, 133 F.3d 1443, 1446 (11th Cir. 1998). The test seeks to determine whether the allegedly protected speech is a matter of public concern. *Tindal,* 32 F.3d

at 1539 ("We have held that no First Amendment protection attaches to speech that - for personal benefit - exposes *personally* suffered harassment or discrimination") (emphasis in original). Irwin's First Amendment claim fails under the *Bryson* test because the speech he wishes to express is for his own benefit and concerns the discrimination he allegedly personally suffered. He hopes to have the opportunity to clear his name and obtain employment as an educator. Irwin's proposed speech is not constitutionally protected. Therefore, Irwin has not asserted a violation of his First Amendment Rights.

Irwin also fails to state a § 1983 violation under the Fourteenth Amendment. According to the Fourteenth Amendment, no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. This due process requirement applies to the federal government through the Fifth Amendment. U.S. Constit. amend. V. To establish a violation, a plaintiff must demonstrate that (1) he had constitutionally protected interest, and (2) "that government deprived him of that interest for improper motive and by means that were pretextual, arbitrary and capricious." *Mackenzie v. City of Rockledge*, 920 F.2d 1554, 1558 (11th Cir. 1991).

Irwin fails to show that the defendants deprived him of a protected interest for improper motive. The evidence before me shows that Irwin's employment in the FIU GEAR UP program was for a specific term. (Nosti Aff. at ¶¶ 4, 8, 10 and Ex. A-C). FIU's GEAR UP program had the policy of requiring individuals to re-apply for the new school year. (Roig Aff. at ¶ 8; Vasquez Aff. at ¶ 9; Nosti Aff. at ¶ 11). Irwin was given two letters explaining that his employment would end after a specific date. Irwin claims he did not receive the first letter, (Irwin Dep. at 320), but he admits receiving the second letter, (Irwin Dep. at 321). The letter reads, in pertinent part, as follows: "Unfortunately, the school year ends on Wednesday June 9th. This would mean the termination of your employment with GEAR UP for this academic year. . . . [P]lease do not hesitate to apply for

the position of Program Assistant for the next academic year, starting August 15th." (Nosti Aff. Ex. B). Irwin, however, never reapplied. (Irwin Dep. at 324-27; Nosti Aff. at ¶ 11). Accordingly, Irwin was never terminated and did not suffer any constitutional deprivation.

Irwin also cannot bring suit for his job transfer and alleged dismissal under § 1983 because he did not hold a constitutionally protected interest. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). In the Supreme Court case of *Board of Regents of State Colleges v. Roth*, an assistant professor at a state university brought a Fourteenth Amendment claim because the university declined to hire him after his first year. *Id.* at 564. The Court held that no due process violation had occurred because the professor, who had no tenure rights, possessed no property interest in continued employment. *Id.* at 577. A unilateral expectation of employment is insufficient to show a claim of entitlement. *Id.*

The *Roth* court further explained that the Constitution does not create property interests; rather, sources such as state law or understandings about secured benefits define property interests. *Id.* at 577. Because Florida is an "at will" employment state, *Cardinale v. Southern Homes of Polk County, Inc.*, 2008 WL 788460, at *6 (M. D. Fla. Mar. 19, 2008), an employee has no property interest in continued employment and no entitlement to due process protection. *Davis v. Mobile Consortium of CETA*, 857 F.2d 737, 741 (11th Cir. 1988). Irwin does not purport that any contract existed to limit FIU's right to terminate his at will employment. As such, Irwin did not hold a constitutionally protected property interest in his continued employment with FIU and therefore cannot bring suit under § 1983.

Irwin also cannot bring suit for his job transfer and alleged dismissal under § 1983 using a theory of "vicarious liability." Irwin avers in his complaint that McGowan is liable on the basis of

"vicarious liability" for failing to properly monitor and train employees. He also makes similar allegations with respect to Roig. Supervisor liability under § 1983 can occur in two instances: "When the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Braddy v. Fl. Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998). The *Braddy* court states the test of whether there is a causal connection as "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fails to do so." *Id.* at 802. The bar for whether there is a history of abuse is high. "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." *Id.* at 802. Therefore, the supervising employee must be confronted with evidence of the constitutional deprivations to incur liability for the actions of an employee under his direction. There are no genuine issues of fact as to whether McGowan and Roig have a prolonged and continuous history of discrimination.

Irwin, in his Second Amended Complaint, also seeks declaratory relief for violation of his constitutional rights. (Second Amended Complaint at ¶¶ 380,417). Declaratory judgment is inappropriate since Plaintiff fails to assert a *prima facie* case under §1983. The district court must first have a jurisdictional basis in order to assert declaratory relief. The Declaratory Judgment Act states: "In *a case of actual controversy* within its jurisdiction, . . . any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (a) (emphasis supplied).

The Declaratory Judgment Act, standing alone, does not confer jurisdictional power upon

the court. The analysis for whether there is a "case or controversy" for declaratory judgment is similar to the "case and controversy" requirement under Article III of the Constitution. *Emory v. Peller,* 756 F.2d 1547, 1552 (11th Cir. 1985). The district court must be able to assert original and independent jurisdiction over the case in order to provide declaratory relief. The *Emory* court stated: "[t]hat is, under the facts alleged, there must be a substantial continuing controversy between parties having adverse legal interests." *Id.* at 1552. Since the Plaintiff has failed to establish a *prima facie* case, the court lacks the original and independent jurisdiction necessary to provide declaratory relief.

### C.   State Tort Claims

In Irwin's Response to McGowan's and Roig's Motion to Dismiss, he asserts several new state law claims, which were not present in his Second Amended Complaint. Normally, I would disregard the new allegations and analyze the Defendant's Motion to Dismiss under the assertions set forth in the Second Amended Complaint. *See Bruhl v. Price Waterhousecoopers Int'l*, No. 03-23044, 2007 WL 997362 at *4 (S.D. Fla., Mar. 27, 2007 (noting that a plaintiff may not supplant allegations made in their complaint with new allegations raised in a response to a motion to dismiss); accord *Walker v. City of Orlando*, No. 07-651, 2007 WL 1839431 at *5 (M.D. Fla. Jun. 26, 2007) (limiting consideration to the allegations contained in the complaint, even when new allegations were raised in response to a Motion to Dismiss). This case, however, involves a *pro se* plaintiff; therefore, the court must liberally construe Irwin's response. When *pro se* plaintiffs raise additional allegations in their filings, these allegations should be construed as a motion to amend the complaint, and the motion should be granted. *Newsome v. Chatham County Detention Ctr.*, 256 Fed. App'x 342, 344 (11th Cir. 2007). The court, in a *pro se* case, should generally allow the plaintiff leave to amend his complaint.

I am, nonetheless, denying Irwin leave to amend his complaint for two distinct reasons. First, Irwin has already had two opportunities to allege new facts or law, which were not included in his original complaint. Irwin filed his original Complaint on December 15, 2006, his First Amended Complaint on July 2, 2007, and his Second Amended Complaint on October 10, 2007. In addition to having opportunities to assert his new claims, Irwin also had ample time to make his assertions since over twenty-one months expired between his initial complaint and his Second Amended Complaint. Irwin should have included his additional claims in either his First or Second Amended Complaint, not in his response to Defendant's Motion to Dismiss. Second, even if Irwin were permitted to introduce new state law claims, these new claims would fail.

Irwin alleges, in his Response to Defendant's motions to dismiss, that McGowan and Roig violated several Florida statutes and committed torts. The only torts that the court can discern are gross or wanton negligence, negligence *per se*, fraud, and intentional infliction of emotional distress. Given Irwin's deposition testimony and the statutes upon which he relies, it is clear that the additional claims he is attempting to assert are frivolous.

Irwin seems to assert a negligence claim for gross or wanton conduct against McGowan and Roig. Florida courts recognize both gross and wanton negligence. "Gross negligence has been defined as the equivalent of slight care, that course of conduct which a reasonable and prudent person would know would probably and most likely result in injury to person or property." *Farrell v. Fisher*, 578 So. 2d 407, 409 (Fla. 4th DCA 1991). "Wanton negligence, on the other hand, is *no* care or the absence of any care and is only one degree removed from willful misconduct." *Id.* at 995 (emphasis in original). Under either form of negligence, the defendant mush breach a duty of care; the deciding factor between the two is exactly what amount of care was breached.

Regardless of the negligence standard, Irwin fails to assert a valid negligence claim against Defendants. All the evidence in the record thus far shows that Defendants did not breach a duty. The undisputed evidence in the record shows that McGowan reviewed Irwin's appeal of the findings made by the Office of Equal Opportunity Programs at Florida International University. (McGowan Aff. at ¶ 6). McGowan's determination that Irwin failed to present a valid discrimination complaint does not amount to a breach of duty. Roig also did not breach any duty. He reviewed Irwin's employment information with the GEAR UP program and determined that Irwin's allegations of discrimination were unfounded. (Roig Aff. at ¶ 7). Moreover, Irwin was not discharged from the program nor did anyone at the program refuse to rehire him. (Roig Aff. at ¶ 8). Irwin simply never submitted an application for employment for the following academic year. (Roig Aff. at ¶ 8). Roig, therefore, did not breach any duty to Irwin.

Irwin asserts that Defendants McGowan and Roig committed negligence *per se* and cites the following statutes in support of his assertion: Fla. Stat. §§ 20.50, 443.012, 443.151, 443.171, 768.72(2)(b), 448.102, 447.503, 435.06, 448.045, 760.10, 760.01-760.11, 120.52(8), 120.52(8), 120.569, 120.57(1)(e)(2), and 1000.05(2)(a).[2] None of these statutes provide a basis for relief.

Fla. Stat. § 448.102 states: "A[n] employer may not take any retaliatory personnel action against an employee because the employee has. . . disclosed, or threatened to disclose, to any appropriate governmental agency . . . an activity, policy, or practice of the employer that is in

---

[2] Irwin's reliance on Fla. Stat. §§ 20.50; 443.012, 443.151; and 443.171 is misplaced. These statutes address the organization, procedure, powers, and duties for the Agency for Workforce Innovation and the Unemployment Appeals Commission. Irwin has not alleged that he was denied unemployment compensation. Irwin's reliance on Fla. Stat. §§ 120.52(8), 120.569 and 120.57(1)(e)(2) is also misplaced. These statutes address procedures for disputes before an administrative law judge and when an agency may act upon unadopted rules. These statutes are not applicable to Irwin's case.

violation of a law, rule or regulation." This is the private employer "Whistle-blower's Act." Irwin should have relied upon Fla. Stat. § 112.3187 - the public agency "Whistle-blower's Act."

I will analyze Irwin's claims under Fla. Stat. § 112.3187 since he is making allegations against public agency employees. Irwin has not produced any evidence indicating that retaliatory actions were taken against him. Irwin suggests that he was terminated from the GEAR UP program as a result of the several complaints he filed against a Miami-Dade School Board member. The evidence in the case does not support Irwin's theory. At deposition, Irwin testified that he did not have personal knowledge of the School Board demanding that FIU terminate his employment. (*Id.* at 334). Irwin also testified that he did not have personal knowledge that Roig had ever communicated with Miami-Dade School Board members or staff. (Irwin Dep. at 333). Roig did not know that Irwin had filed complaints against anyone working for the Miami-Dade School Board. (Statement of Undisputed Matieral Facts at ¶ 11). As such, the evidence shows that no retaliatory action was taken against Irwin.

Furthermore, allegations made using Fla. Stat. § 112.3187 are not actionable against defendants McGowan and Roig. In *De Armas v. Ross* the court answered the question whether it was appropriate to apply Fla. Stat. § 112.3187 to public agency employees sued in their official and individual capacities. *De Armas v. Ross*, 680 So. 2d 1130, 1131 (Fla. 3d DCA 1996). The court stated that it was inappropriate to sue these employees in their individual capacity. *De Armas,* 680 So. 2d at 1131. The court also stated that it was inappropriate to sue individuals in their official capacity when the governmental agency is also sued. *Id*. at 1132. Irwin has sued Florida International University. Since Irwin is suing defendants in their individual and official capacities and has already sued the government agency employing them, he fails to make a negligence *per se* claim against McGowan and Roig under Fla. Stat. § 112.3187.

Irwin asserts that McGowan and Roig violated Fla. Stat. § 447.503, which set forth procedural requirements for a fair labor practice dispute brought under Fla. Stat. § 447.501. Section 447.503 does not seem to apply to this case as the statute focuses on labor unions. The intent of Chapter 447, Florida Statutes, is "to regulate the activities and affairs of labor unions, their officers, agents, organizers and other representatives, in the manner, and to the extent hereafter set forth." Fla. Stat. § 447.01(2). Based on the record, there does not appear to be a labor union involved in Irwin's dispute. Therefore, I find that this statute is not applicable in Irwin's case against McGowan and Roig.

Fla. Stat. § 435.06 addresses when an employee can be terminated for failure to comply with an employment screening and actions that must be taken if an employee does not meet screening criteria. This statute does not assist Irwin in asserting a negligence *per se* claim. Irwin was not terminated from his position at FIU. His employment term simply came to an end. Therefore, Irwin cannot sue under Fla. Stat. § 435.06.

Irwin asserts a negligence *per se* claim against Nosti and Osborne, relying upon Florida's Wrongful Combinations Against Workers Statute, Fla. Stat. Ann. 448.045. The pertinent part of the statute states: "If two or more persons shall agree, conspire, combine, or confederate together for the purposes of preventing any persons from procuring work in any firm or corporation . . . *such persons so combining shall be deemed guilty of a misdemeanor of the first degree*, punishable as provided in s. 755.082 or s. 775.083." Fla. Stat. Ann. § 448.045 (emphasis added). This statute provides for a criminal punishment, and does not discuss civil remedies. In *Morrison v. Morgan Stanley Properties*, the court found that Fla. Stat. Ann. § 448.045 did not apply to a private cause of action. *Morrison v. Morgan Stanley Prop.*, No. 06-80751, 2007 WL 2316495, at *10 (S.D. Fla. Aug. 9, 2007) ("When a criminal remedy is available, and no civil remedy is assigned, it is not

assumed that a civil remedy exists"). Since Fla. Stat. § 448.045 cannot be sued upon in a private cause of action, Irwin's claim must fail.

Irwin also bring a negligence *per se* claim under Fla. Stat. § 760.10. This statute discusses unlawful actions by an "employer, employment agency, labor organization, or joint labor-management committee." Fla. Stat. § 760.10. It provides: "It is an unlawful employment practice for an employer . . . to discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status." Fla. Stat. § 760.10(1)(a). Irwin's failure to apply for a position for the following academic year was the reason that Irwin was not offered continued employment with the GEAR UP program. The GEAR UP program sent letters to Irwin, notifying him of his employment start and end dates. (Irwin Dep. at 321). Irwin acknowledged at his deposition that he did not apply for a position for the following academic year. (Irwin Dep. at 324-27). Based on Irwin's conclusory allegations and the record, Irwin may not maintain a cause of action under Fla. Stat. § 760.10(1)-(5), (7), (8).

Irwin further alleges that McGowan and Roig are liable under Fla. Stat. § 760.01-11, the "Florida Civil Rights Act of 1992." The purpose of the "Florida Civil Rights Act of 1992" is to "secure for all individuals within the state freedom from discrimination because of race, color, religion, sex, national origin, age, handicap, or marital status and thereby to protect their interest . . ." Fla. Stat. § 760.01(2). Irwin cannot allege discrimination against McGowan and Roig. Since Irwin was not fired, he cannot show that his employment was terminated for a discriminatory reason. Thus, Irwin cannot sustain a claim under the Florida Civil Rights Act.

Irwin alleges that McGowan and Roig violated Fla. Stat. § 1000.05(2)(a), the "Florida

Educational Equity Act." Fla. Stat. § 1000.05(2)(a) also provides protection from "[d]iscrimination on the basis of race, ethnicity, national origin, gender, disability, or marital status against a student or an employee in the state system of public K-20 education . . . ."  The record shows that Irwin did not resume his position as an assistant for the GEAR UP program because he did not apply for a position for the upcoming year.  The facts do not indicate that he was discriminated against on any basis.  Therefore, Irwin cannot sue under Fla. Stat. § 1000.05(2)(a).

Irwin asserts a claim of fraud against the defendants.  In Florida, the essential elements needed for a fraud claim are: (1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false: (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the representation.  *Lopez-Infante v. Union Cent. Life Ins.* Co, 809 So. 2d 13,14 (Fla. 3d DCA 2002).  While it is conceivable that Irwin could allege that Defendants McGowan and Roig made a false statement, he has not shown that he relied on any of their statements.  The facts show that Irwin did not believe any of the Defendants' statements.  On the contrary, Irwin sought to contest his employment grievance instead of relying on anything McGowan and Roig might have told him.  Since Irwin cannot satisfy the essential element of reliance, Irwin fails to state a fraud claim.

Irwin asserts a claim for intentional infliction of emotional distress against defendants Nosti and Osborne.  The essential elements needed to assert a claim for intentional infliction of emotional distress are:

> (1) [t]he wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that the emotional distress would likely result;
> (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community;
> (3) the conduct caused emotion [sic] distress;

(4) and the emotional distress was severe.

*LeGrande v. Emmanuel*, 889 So. 2d 991, 995 (Fla. 3d DCA 2004).

The *LeGrande* court further analyzed the meaning of outrageous, choosing to apply the Restatement of Torts definition: "conduct as that which is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *LeGrande,* 889 So. 2d at 995 (quoting Restatement 2d of Torts, § 46 (1965).  The standard is clearly objective.  While Irwin might be very offended with McGowan and Roig's actions and statements, their actions and comments are not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*.  Since Irwin cannot demonstrate that the defendants' behavior was outrageous, he fails to assert an intentional infliction of emotional distress claim.

### IV. CONCLUSION

For the reasons set forth above, Defendants John McGowan's and Gustavo Roig's Motions to Dismiss Second Amended Complaint [D.E. 258, 251] are denied and their Motion for Summary Judgment [D.E. 449] is granted.

**DONE AND ORDERED** in Miami, Florida, this 24th day of February 2009.

_____
MARCIA G. COOKE
United States District Judge

cc:

Honorable Ted E. Bandstra

All counsel of record

Ralph Irwin, *pro se* Plaintiff