**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**CASE NO. 06-23029-CIV-COOKE/BANDSTRA**

RALPH IRWIN

     *Plaintiff,*

v.

MIAMI-DADE COUNTY PUBLIC
SCHOOLS, *et al.*,

     *Defendants.*

_____/

**ORDER GRANTING IN PART AND DENYING IN PART**
**DEFENDANTS' MOTION TO DISMISS AND GRANTING IN PART AND**
**DENYING IN PART THEIR MOTION FOR SUMMARY JUDGMENT**

This matter is before me on Defendants Florida Department of Education ("FDOE"), John Franco ("Franco"), Marian Lambeth ("Lambeth"), Jeanine Blomburg ("Blomburg"), and Charlie Crist's ("Crist") joint motion to dismiss *pro se* plaintiff Ralph Irwin's ("Irwin") second amended complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6) [D.E. 227], and their motion for summary judgment [D.E. 443]. For the reasons stated below, the motion to dismiss is granted in part and denied in part and the motion for summary judgment is granted in part and denied in part as moot.

## I. BACKGROUND

Irwin filed his second amended complaint [D.E. 192], seeking, *inter alia*, damages from FDOE, Franco, Lambeth, Blomburg and Crist. Irwin brings a claim against FDOE pursuant to 42 U.S.C. § 1983 (Count 18) and argues that FDOE violated his First, Fifth, and Fourteenth Amendment rights. (Irwin's Second Am. Compl. 78, 1). He alleges that FDOE violated his privacy, equal protection, and due process rights by investigating and acting upon his expunged

arrest record.  (*Id*. at 78, 2).  He claims that a "derogatory and accusatory" clearance letter in his personnel file diminished his chances for employment.  (*Id*. at 79, 7).  Irwin further claims that there is no compelling government interest to justify FDOE's investigation into and reporting of his expunged, dismissed record.  (*Id*. at 80, 11).

Irwin also sues Franco, Lambeth, Blomburg and Crist in their individual capacities, pursuant to 42 U.S.C. § 1983, as FDOE high-level state officials who allegedly directed and condoned the agency's policies that injured him.  Specifically, he sues Franco (Count 19), who was FDOE Inspector General, because he failed to respond adequately to his complaint letters that requested an investigation into the actions taken against him.  (*Id*. at 81, 21).  Irwin sues Lambeth (Count 20), who was FDOE Chief of Bureau of Professional Practices Services, for allegedly refusing to reply and fraudulently evading a response to Irwin's allegations that her office maintained a policy and practice of discrimination and constitutional abuse.  (*Id*. at 83, 18).  Irwin alleges that Blomburg, who was the FDOE Commissioner, similarly condoned and permitted FDOE's violations (Count 21).  (*Id*. at 86, 5).  Finally, Irwin sues Crist,  who was also FDOE Commissioner (Count 22), for placing a "censorious" clearance letter in Irwin's file, which is accessible to education administrators nationwide.  (*Id*. at 88, 12).

Defendants move to dismiss all counts [D.E. 227].  Irwin filed a response opposing Defendants'motion to dismiss [D.E. 269], to which Defendants replied [D.E. 281].  Defendants also moved for summary judgment [D.E. 443].  In his response to Defendants' motion for summary judgment [D.E. 470], Irwin requests that the summary judgment be granted in his favor.  Defendants did not file a reply.

## II. LEGAL STANDARD

### A. Motion to Dismiss

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:...(6) failure to state a claim upon relief can be granted."  "When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted." *Holtzman v. B/E Aerospace, Inc.*, No. 07-80511, 2008 WL 214715, at *1 (S.D. Fla. Jan. 24, 2008) (referring to a Motion to Dismiss filed under Rule 12(b)(6)) (citation omitted). The complaint may be dismissed if the facts as pled do not state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1968-69, 1974 (2007) (abrogating the old "unless it appears beyond a doubt that the plaintiff can prove no set of facts" standard and replacing it with a standard requiring "only enough facts to state a claim to relief that is plausible on its face."); *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1037 (11th Cir. 2001)("Pleadings must be something more than an ingenious academic exercise in the conceivable.") (en banc) (quoting *United States v. Students Challenging Regulatory Ag. Proc.*, 412 U.S. 669, 688 (1973)).   More simply, dismissal is appropriate if the plaintiff has not "nudged [its] claims across the line from conceivable to plausible." *Twombly*, 127 S.Ct. at 1974. Additionally, *pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and must be liberally construed.  *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003); see also *Faulk v. City of Orlando*, 731 F.2d 787, 789-90 (11th Cir. 1984) ("A . . . *pro se*

complaint 'however inartfully pleaded   must be held to 'less stringent standards than formal pleadings drafted by lawyers'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)).

### B. Motion for Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  According to the U.S. Supreme Court, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. . . [o]nly when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324.  Thus, the nonmoving party "'may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial.'"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 586 (1984) (stating "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts").  The Court, however, must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue of material fact remains.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).  Furthermore, the court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1140 (11th Cir. 2007) (citing *Carlin Commc'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

### III. ANALYSIS

#### A. Motion to Dismiss

##### 1. Eleventh Amendment Bars Claims Against FDOE

FDOE does not qualify as a "person" as required by 42 U.S.C. § 1983.  A cause of action brought under § 1983 has two essential elements: (1) the conduct complained of must have been committed by *a person* acting under color of state law, and (2) the conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or the laws of the United States.  *Whitehorn v. Harrelson*, 758 F.2d 1416, 1419 -1420 (11th Cir. 1985) (emphasis added) (citing 42 U.S.C. § 1983).  A state and its agencies are not "persons" within the meaning of § 1983.  *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (citing *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989)).  Irwin's allegations against FDOE brought under § 1983 fail to state a claim since he does not (and cannot) assert that the acts complained of were committed by a person. Moreover, an action brought in federal court against a state or one of its agencies is barred by the Eleventh Amendment.  *Scott v. Taylor*, 405 F.3d

1251, 1255 (11th Cir. 2005); *Pennhurst State Sch. & Hosp.v. Halderman*, 465 U.S. 89, 100

(1984).  Therefore, Irwin's claims are also barred by the Eleventh Amendment because FDOE is

a state agency.  Accordingly, FDOE's Motion to Dismiss is granted and Irwin's claims against

FDOE are dismissed with prejudice.

## 2. Eleventh Amendment Bars Claims against Blomburg and Crist in their Official Capacities

Defendants note that, according to the complaint (Irwin's Second Am. Compl. 9, 6-12),

Irwin sues Crist and Blomburg individually and in their official capacities, but he later indicates

in Count 21 and 22 that they are only being sued individually.  (Irwin's Second Am. Compl. 81-

83; 88-90).  The Eleventh Amendment bars suit against Blomburg and Crist in their official

capacities.  The Supreme Court has stated: "[S]tate officials literally are persons.  But a suit

against a state official in his or her official capacity is not a suit against the official but rather is a

suit against the official's office."  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

Because an action against a state official in their official capacity is no different than a suit

against the state itself, the Eleventh Amendment bars the suit against Blomburg and Crist in their

official capacities.  *Id*. at 71.  Thus, the motion to dismiss is granted with respect to the claims

against Blomburg and Crist in their official capacities.

## 3. 42 USC § 1983 Claims Against Blomburg, Franco, and Lambeth in their Individual Capacity

Defendants argue that they are insulated from the § 1983 claims because of their

qualified immunity. (Defs.' Joint Mot. to Dismiss 9, 15).  Qualified immunity protects

government officials performing discretionary functions from liability for civil damages if their

conduct does not violate "clearly established statutory or constitutional rights of which a

reasonable person would have known." *Mitchell v. Forsyth*, 472 U.S. 511, 517 (1985).  Unless a plaintiff's complaint states a claim for a violation of a clearly established law, a defendant is entitled not to stand trial or face the burdens of litigation.  *Id*. at 526.

Irwin's allegations against Blomburg, Franco, and Lambeth concern letters that he sent to FDOE requesting further investigation into why he was denied employment and also requesting the removal of Crist's clearance letter from his file.  Irwin alleges that Franco "failed to adequately respond to either of [his] complaint letters in which [he] requested [Franco] investigate the many unfair actions taken against [him]."  (Irwin's Second Am. Compl. 81, 24).  He claims that Franco refused to "explain exactly what criteria FDOE used that justified Crist issuing [the] 'clearance' letter."  (*Id*. 23, 15).  Irwin alleges that Lambeth's responses to his complaints were also inadequate and that she "fraudulently evaded responding to [his] complaints through use of false misrepresentations of law and fact."  (*Id*. at 83, 23).  Lambeth replied to Irwin that her department could not remove FDOE's clearance letter from his personnel file.  Lambeth allegedly failed to address Irwin's concerns regarding the unconstitutionality of the clearance letter.  (*Id*. at 33, 4).  Irwin claims that Blomburg similarly "condoned, encouraged, permitted, and tolerated" constitutional violations.  (*Id*. at 86, 5).

In other words, Irwin alleges that Blomburg, Franco, and Lambeth acted outside the scope of their discretionary authority when they failed to act.  Given that *pro se* pleadings are to be construed liberally, the facts alleged, taken in the light most favorable to Irwin, appear to establish that Blomburg, Franco, and Lambeth 's conduct violated Irwin's constitutional rights.  Accordingly, a determination of whether Blomburg, Franco, and Lambeth are entitled to qualified immunity is premature at the motion to dismiss stage.

**4. 42 USC § 1983 Claims Against Crist in his Individual Capacity**

Irwin claims that FDOE Commissioner Crist signed and placed in his personnel file a "highly derogatory and accusatory 'clearance' letter," which stated: "be advised that a future violation of the professional standards can be and will result in action against your certificate." (Irwin's Second Am. Compl. 18, 15).  The clearance letter is allegedly a public record and is accessible for review to all education administrators nationwide.  Irwin alleges that the clearance letter causes employers to treat him differently than other applicants and has diminished his potential for seeking employment.

While Crist's clearance letter indicates there was no probable cause to deny his application for a Florida educator's certificate, the letter also states that Crist "do[es] not intend to minimize the concerns raised by [Irwin's] law enforcement record" and that a future violation of the professional standards can and will result in action against his certificate.  (Irwin's Resp. in Opp'n to Mot. to Dismiss 50).  Irwin asserts that Crist "committed such action with subjective knowledge of the letter's falsity and reckless disregard for the true [sic]." (Irwin's Second Am. Compl. 88, 23).  Irwin alleges that Crist acted outside the scope of his discretionary authority when he wrote and placed in his file this alleged "accusatory" letter.  (Irwin's Resp. in Opp'n to Mot. to Dismiss 20, 24).  Given that *pro se* pleadings are to be construed liberally, the facts alleged, taken in the light most favorable to Irwin, appear to establish that Crist's conduct violated Irwin's constitutional rights.  Accordingly, a determination of whether Crist is entitled to qualified immunity is similarly premature at the motion to dismiss stage.

**5. Statute of Limitations Inapplicable to Claims Against FDOE and Crist**

A person who brings a § 1983 claim must do so within four years following the time the person knows or has reason to know that he has been injured.  *Baker v. Gulf & Western Indus., Inc.*, 850

F.2d 1480, 1483 (11th Cir, 1988); *Mullinax v. McHelhenney*, 817 F.2d 711, 716 (11th Cir. 1987). Defendants argue that Irwin's claims against FDOE and Crist are time barred.  (Defs.' Joint Mot. to Dismiss 6, 17).  Specifically, Defendants point out that the alleged violations by FDOE, i.e., FDOE's acceptance of referral action from Miami-Dade County Public Schools, occurred on or about September 16, 2002, whereas Irwin did not file his original complaint until after four years had passed, i.e., on December 15, 2006.  In addition, Defendants claim that Irwin sought to sue Crist in his individual capacity for the first time in his first amended complaint, filed on July 2, 2007, i.e., more than four years after Crist had placed the December 17, 2002 "accusatory and derogatory" letter in Irwin's file.

With respect to the claims against the FDOE, the alleged violations committed by FDOE are not limited to FDOE's acceptance of referral action from Miami-Dade County Public Schools, but include independent acts, such as FDOE placing the clearance letter in Irwin's file. (Irwin's Original Compl. 18, 20).  This occurred on December 17, 2002; thus, less than four years before Irwin filed his original complaint on December15, 2006.

With respect to  the claim against Crist, pursuant to Federal Rules of Civil Procedure 15(c), "[a]n amendment to a pleading relates back to the date of the original pleading when: (b) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading."  Accordingly, even though Irwin did not sue Crist in his individual capacity until the filing of his second amended complaint on October 12, 2007, he nevertheless did plead in his original complaint that the placement of Crist's letter in his file violated his rights.  (Irwin's Original Compl. 18, 20).  Therefore, his allegations in the second complaint will be deemed to relate back to December 15, 2006, thus preventing his action against Crist from being time-barred.

### B. Motion for Summary Judgment

The only claims that survive Defendants' motion to dismiss are the claims against

Franco, Lambeth, Blomburg, and Crist in their individual capacity.  Defendants and Irwin

acknowledge, however, that there are no genuine issues as to any facts material to these claims.

(Defs.' Joint Mot. for Summ. J. 2; Irwin's Resp. to Defs.' Joint Mot. for Summ. J. 1).

Defendants motion for summary judgment with respect to these claims should, therefore, be

granted.

### 1. Section 1983 Claims

Defendants Franco, Lambeth, Blomburg, and Crist are entitled to summary judgment

under Rule 56(c).  Irwin alleges § 1983 violations under the First, Fifth, and Fourteenth

Amendments.  A cause of action brought under § 1983 has two essential elements: (1) the

conduct complained of must have been committed by a person acting under color of state law,

and (2) the conduct must have deprived the plaintiff of rights, privileges, or immunities secured

by the Constitution or the laws of the United States.  *Whitehorn*, 758 F.2d at 1419 (11th Cir.

1985) (emphasis added) (citing to 42 U.S.C. § 1983).

Irwin fails to assert a First Amendment violation under § 1983.  Irwin seems to suggest

his First Amendment rights were violated when he was not provided with the opportunity to

address his employment grievances.  His claim fails because he did have the opportunity to air

his grievances.  He filed a complaint with the FDOE, which the FDOE reviewed.  (Defs.' Joint

Mot. for Summ. Ex. C).  Franco, in his capacity as FDOE Inspector General, reviewed it and

determined that there was "no predicate for further investigation by the Office of Inspector

General."  (Defs.' Joint Mot. for Summ. Ex.C, F).  Similarly, Lambeth, in her capacity as Chief

of the FDOE Bureau of Professional Practices Services, acknowledged, in her correspondence

with Irwin, that the Bureau of Professional Practices Services received his letter, but stated that

Irwin's concerns regarding the interpretation of the questions on employment applications were

addressed to the wrong department, and that his request to remove Crist's letter from his file was

not a request that could be fulfilled by her department.  (Defs.' Joint Mot. for Summ. Ex. H, J).

Irwin thus had an opportunity to state his grievances, which several FDOE employees reviewed.

Irwin also fails to state a § 1983 violation under the Fourteenth Amendment.  The

Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or

property, without due process of law."  U.S. Const. amend. XIV.  This due process requirement

applies to the federal government through the Fifth Amendment.  U.S. Const. amend. V.  The

Eleventh Circuit has stated that, in order to establish a violation, a plaintiff must demonstrate

that (1) he had a constitutionally protected interest, and (2) "the government deprived him of that

interest for improper motive and by means that were pretextual, arbitrary and capricious."

*Mackenzie v. City of Rockledge*, 920 F.2d 1554, 1558 (11th Cir. 1991).  Irwin fails to show that

Defendants deprived him of a protected interest for improper motive.  Irwin has not been

deprived of his freedom to take advantage of teaching-related employment opportunities.  *Board*

*of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972).  On the contrary, Crist's letter,

placed in Irwin's file, states that there is "no probable cause to deny [Irwin's] application for a

Florida Educator's Certificate."   (Defs.' Joint Mot. for Summ. Ex. C).  Since Irwin has not been

deprived of a property interest, he cannot make out a claim for a due process violation.  *Id.* at

578.

Similarly, Irwin cannot make out a claim under the equal protection clause of the

Fourteenth Amendment, which states that "[n]o state [ ] shall deny to any person within its

jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV.  The Eleventh Circuit

11

has acknowledged that "[u]nequal application of a state law may violate the equal protection clause." *Mackenzie*, 920 F.2d at 1559. "To overcome an equal protection challenge, distinctions between similarly situated persons must be reasonable, not arbitrary, and substantially related to the object of the legislation." *Id.* Plaintiff has not presented any evidence that others were treated differently than he was. All applicants must pass the same screening requirements. Crist's clearance letter was placed in Irwin's file as part of the screening process. Additionally, this letter does not deprive Irwin of any right. Therefore, he cannot maintain a § 1983 suit under the Fourteenth Amendment.

**2. State Law Claims**

In Irwin's response to Defendants' motion to dismiss, he asserts several new state law claims, which were not present in his second amended complaint. [D.E. 470]. Normally, I would disregard the new allegations and analyze the Defendant's motion to dismiss under the assertions set forth in the second amended complaint. *See Bruhl v. Price Waterhousecoopers Int'l*, No. 03-23044, 2007 WL 997362 at *4 (S.D. Fla. Mar. 27, 2007) (noting that plaintiffs may not supplant allegations made in their complaint with new allegations raised in a response to a motion to dismiss); accord *Walker v. City of Orlando*, No. 07-651, 2007 WL 1839431 at *5 (M.D. Fla. Jun. 26, 2007) (limiting consideration to the allegations contained in the complaint, even when new allegations were raised in response to a motion to dismiss). This case, however, involves a *pro se* plaintiff; therefore, the court must liberally construe Irwin's response. When *pro se* plaintiffs raise additional allegations in their filings, these allegations should be construed as a motion to amend the complaint, and the motion should be granted. *Newsome v. Chatham County Detention Ctr.*, 256 Fed. Appx. 342, 344 (11th Cir. 2007). The court, in a *pro se* case, should generally allow the plaintiff leave to amend his complaint.

12

I am, nonetheless, denying Irwin leave to amend his complaint for two distinct reasons. First, Irwin has already had two opportunities to allege new facts or law, which were not included in his original complaint. Irwin filed his original complaint on December 15, 2006, his first amended complaint on July 2, 2007, and his second amended complaint on October 10, 2007. [D.E. 1, 88, 192]. In addition to having multiple opportunities to assert his new claims, Irwin also had ample time to make his assertions since over ten months expired between his initial complaint and his second amended complaint. Irwin should have included his additional claims in either his first or second amended complaint, not in his response to Defendant's Motion to Dismiss. Second, even if Irwin were permitted to introduce new state law claims, these new claims would fail.

### a. Statute Based Claims

Irwin alleges, in his response to Defendant's Motion to Dismiss, that Defendants violated several Florida statutes and committed torts. (Irwin's Resp. in Opp'n to Mot. to Dismiss 13, 1). The court can discern from his pleadings the following torts.

### *Negligence Per Se*

Irwin asserts that Defendants committed negligence *per se*. (Irwin's Resp. in Opp'n to Mot. to Dismiss 12, 24). It is unclear whether Irwin relies on all the statutes cited under the caption relating to negligence *per se* to make his claim or if the statutes are new and independent claims. I will assume that the statutes allegedly violated by Defendants support Irwin's negligence *per se* claim and are also independent claims.

Under Florida law, negligence *per se* is the "violation of any other statute which establishes a duty to take precautions to protect a particular class of persons from a particular type of injury." *DeJesus v. Seaboard Coast Line R. Co.*, 281 So. 2d 198, 201 (Fla. 1973).

13

Therefore, to have a valid negligence *per se* claim, a plaintiff must establish that "he is of the class the statute was intended to protect, that he suffered injury of the type the statute was intended to prevent, and that the violation of the statute was the proximate cause of injury." *Id.* at 201.  Irwin does not identify a specific class protected by the statutes.  Moreover, I find that Irwin fails to assert valid claims under the statutes cited, which are analyzed below.  His negligence *per se* claim, therefore, must fail.

### *Gross Negligence*

Irwin alleges that Defendants committed gross negligence under Fla. Stat. §768.72(2)(b). (Irwin's Resp. in Opp'n to Mot. to Dismiss 13, 1).  Florida courts recognize both gross and wanton negligence.  "Gross negligence has been defined as the equivalent of slight care, that course of conduct which a reasonable and prudent person would know would probably and most likely result in injury to person or property." *Farrell v. Fisher*, 578 So. 2d 407, 409 (Fla. 4th DCA 1991).  "Wanton negligence, on the other hand, is *no* care or the absence of any care and is only one degree removed from willful misconduct." *Id.* at 409.  (emphasis in original).  Under either form of negligence, the defendant mush breach a duty of care; the deciding factor between the two is exactly what amount of care was breached.

Regardless of the negligence standard, Irwin fails to assert a valid negligence claim against Defendants.  All the evidence in the record shows that Defendants did not breach a duty. Franco and Lambeth reviewed his complaints and replied to Irwin.  Franco's determination that there was no basis for further investigation of Irwin's complaints, and Lambeth's statement that the Bureau of Professional Practices could not fulfill Irwin's request to have Crist's letter removed from his file do not amount to a breach of duty.  Crist confirmed in his letter that there was no probable cause to deny Irwin's application for a Florida educator's certificate.  Similarly,

14

Blomburg's inaction, while the FDOE had on multiple occasions reviewed and answered Irwin's grievances, cannot amount to a breach of duty.  None of the Defendants, by their action or inaction, breached a duty of care owed to Irwin.  Irwin, therefore, cannot bring a gross negligence claim.

### *Retaliatory Personnel Action*

Irwin alleges that Defendants engaged in retaliatory personnel action in violation of Fla. Stat. § 448.102.  Section 448.102  states: "An employer may not take any retaliatory personnel action against an employee because the employee has [ ] disclosed, or threatened to disclose, to any appropriate governmental agency [ ] an activity, policy, or practice of the employer that is in violation of a law, rule or regulation."  Fla. Stat. § 448.102.  This is the private employer "Whistle-blower's Act."  Irwin should have relied upon Fla. Stat. § 112.3187 - the public agency "Whistle-blower's Act."

I will analyze Irwin's claims under Fla. Stat. § 112.3187 since he is making allegations against public agency employees.  Irwin has not produced any evidence indicating that Defendants retaliated against him in connection with his Miami-Dade Public County School System employment application.  Furthermore, allegations made using Fla. Stat. § 112.3187 are not actionable against Defendants.  In *De Armas v. Ross* the court answered the question whether it was appropriate to apply Fla. Stat. § 112.3187 to public agency employees sued in their official and individual capacities.  *De Armas v. Ross*, 680 So. 2d 1130, 1131 (Fla. 3d DCA 1996).  The court stated that it was inappropriate to sue these employees in their individual capacity.  *Id.*  The court also stated that it was inappropriate to sue individuals in their official capacity when the governmental agency is also sued.  *Id*. at 1132.  Since Irwin is suing Defendants in their individual and official capacities and also sues FDOE, he fails to make a

claim against Blomburg, Lambeth, Crist and Franco in their individual and official capacities under Fla. Stat. § 112.3187.  (Second Amended Complaint ¶ 363).

### Charges of Unfair Labor Practices

Irwin asserts that Defendants violated Fla. Stat. § 447.503, which sets forth procedural requirements for fair labor practice disputes brought under Fla. Stat. § 447.501.  Section 447.503 does not seem applicable to this case as this statute focuses on labor unions.  The intent of Chapter 447, Florida Statutes, is "to regulate the activities and affairs of labor unions, their officers, agents, organizers and other representatives, in the manner, and to the extent hereafter set forth."  Fla. Stat. § 447.01(2).  Based on the factual record, there does not appear to be a labor union involved in Irwin's dispute.  Therefore, this statute is not applicable to Irwin's case against Defendants.

### Exclusion from Employment

Irwin alleges that Defendants acted in violation of Fla. Stat. § 435.06.  Fla. Stat. § 435.06 addresses when an employee can be terminated or denied a position for failure to comply with an employment screening and actions that must be taken if an employee does not meet screening criteria.  However, as Crist's letter confirmed, no probable cause was found to deny Irwin his teaching certificate.  Furthermore, none of the individual Defendants were in a position to terminate Irwin or deny him a job.  Therefore, Irwin cannot sue Defendants under Fla. Stat. § 435.06.

### Confidentiality of Personnel Background Information

Irwin also alleges that Defendants acted in violation of Fla. Stat. § 435.09.  Pursuant to this statute, "[n]o criminal [ ] information obtained under this section may be used for any purpose other than determining whether persons meet the minimum standards for employment."

16

Irwin, however, does not allege any purpose for which Defendants could have used the alleged criminal information other than determining whether he met the minimum standards for employment.  Irwin, therefore, does not state a  claim under this statute.

### *Sharing Personnel Information Among Employers*

Irwin also asserts that Defendants acted in violation of Fla. Stat. § 435.10, which states that "[e]very employer of employees covered by this chapter shall furnish copies of personnel records for employees or former employees to any other employer requesting this information pursuant to this section."  The statute further states: "Information contained in the records may include, but is not limited to, disciplinary matters and any reason for termination."  Irwin claims that Crist's letter should be removed from his file.  (Irwin's Second Am. Compl. 88, 19).  However, this statute is not applicable to Defendants, since they cannot qualify, in their individual capacity, as employers pursuant to the statute.  Employer means "any person or entity required by law to conduct screening of employees pursuant to this chapter."  Fla. Stat. § 435.02.  Defendants Franco, Lambeth, Crist and Blomburg are not personally required by law to screen employees.  Irwin's claim pursuant to Fla. Stat. § 435.10, therefore, fails.

### *Penalties*

Irwin asserts that he has a claim against Defendants pursuant to Fla. Stat. § 435.11(a)(b), captioned "Penalties."  Since Fla. Stat. § 435.11(1)(a) applies to the acts committed by a person applying for employment, I will assume that Irwin meant to sue under Fla. Stat. § 435.11(1)(b).  Pursuant to this statute, "[i]t is a misdemeanor of the first degree [ ] for any person willfully, knowingly, or intentionally to: [ ] (b) Use records information for purposes other than screening for employment or release records information to other persons for purposes other than screening for employment."  Nothing in the record shows, nor does Irwin allege, that Defendants Franco,

17

Lambeth, Blomburg, and Crist used Irwin's record information for purposes other than screening for employment.  Accordingly, Irwin cannot assert a claim under this statute.  Moreover, this statute provides for a criminal remedy and not a civil one.  Courts are generally reluctant to create civil remedies "where the legislature has chosen not to."  *Temple v. Aujla*, 681 So. 2d 1198, 1199 (Fla 5th DCA); *Morrison v. Morgan Stanley Prop.*, No. 06-80751, 2007 WL 2316495, at * 10 (S.D. Fla. Aug. 9, 2007).  Irwin's claim must, therefore, fail.

### Wrongful Combinations Against Workers

Irwin asserts an additional claim relying upon Florida's Wrongful Combinations Against Workers Statute,  Fla. Stat. § 448.045.  The pertinent part of the statute states: "If two or more persons shall agree, conspire, combine, or confederate together for the purpose of preventing any persons from procuring work in any firm or corporation . . . *such persons so combining shall be deemed guilty of a misdemeanor of the first degree*, punishable as provided in s. 755.082 or s. 775.083." (Fla. Stat. Ann. § 448.045) (emphasis added).  This statute provides for a criminal punishment, but it does not discuss civil remedies.  In *Morrison v. Morgan Stanley Properties*, the court found that Fla. Stat. § 448.045 did not apply to a private cause of action.  *Morrison v. Morgan Stanley Prop.*, No. 06-80751, 2007 WL 2316495, at * 10 (S.D. Fla. Aug. 9, 2007) ("When a criminal remedy is available, and no civil remedy is assigned, it is not assumed that a civil remedy exists").  Since Fla. Stat. § 448.045 cannot be sued upon in a private cause of action, Irwin claim fails.

### Disclosure of Information Regarding Former Employee

Pursuant to Fla. Stat. § 768.095, "[a]n employer who discloses information about a former or current employee to a prospective employer of the former or current employee upon request of the prospective employer or of the former or current employee is immune from civil

18

liability for such disclosure or its consequences unless it is shown by clear and convincing evidence that the information disclosed by the former or current employer was knowingly false or violated any civil right of the former or current employee."  Fla. Stat. § 768.095 is an affirmative defense.  Accordingly, Irwin must first demonstrate a prima facie case for the employer's civil liability.  *Linafelt v. Beverly Enterprises-Florida*, 745 So. 2d 386, 388 (Fla. 2d DCA 1999).

Irwin sometimes refers to Crist's letter as "defamatory."  (Irwin's Second Am. Compl. 88, 19).  If Irwin's intends to bring a defamation claim, he bears the burden of demonstrating by clear and convincing evidence that his former employer made a statement to a prospective employer that was "knowingly false," "deliberately misleading," or "rendered with a malicious purpose."  *Id*. at 389.  Irwin has not produced any evidence that would create a genuine issue of fact as to whether the statements in Crist's letter to Irwin were knowingly false, deliberately misleading, or rendered with a malicious purpose.  The record does not show that the statements were false or that Crist acted with malicious intent.  Crist did not act outside the scope of his authority.  In addition, Defendants, sued in their individual capacities, are not Irwin's "employers."

### *Court Ordered Sealing of Criminal Records*

Irwin asserts that he has a claim against Defendants pursuant to Fla. Stat. § 943.059(4)(c).  According to this statute, it is a misdemeanor for an employee of, among others, the Department of Education to disclose information relating to the existence of a sealed criminal history record of a person seeking licensure with such entity, except to the person to whom the criminal history record relates or to the persons having direct responsibility for licensure decisions.  Nothing in the record shows that Irwin's criminal history record has been

disclosed to a person having no responsibility for licensure decisions.  Therefore, this claim also fails.

### Florida Civil Rights Act

Irwin asserts a claim pursuant to the Florida Civil Rights Act, citing Fla. Stat. § 760.01 and Fla. Stat. § 760.10.  Fla. Stat. § 760.01 states the general purpose of the act, which is "to secure for all individuals within the state freedom from discrimination because of race, color, religion, sex, national origin, age, handicap, or marital status."  Fla. Stat. § 760.10 makes it unlawful to discriminate on the basis of race, color, religion, sex, national origin, age, handicap, or marital status against any person seeking a professional license.  Fla. Stat. § 760.10(5).  Irwin has not been denied his teaching certificate.  Therefore, he cannot have a valid Florida Civil Rights Act claim against Defendants.

### Invalid Exercise of Delegated Legislative Authority
### Decisions Which Affect Substantial Interests
### Demonstrated Validity of Action

I find that Irwin's reliance upon Fla. Stat. §§ 120.52(8); 120.569; and 120.57(1)(e)(2) is misplaced.  These statutes address procedures for disputes before an administrative law judge.  Fla. Stat. § 120.57(1)(e)(2) addresses when an agency may act upon unadopted rules.  These statues are not applicable to Irwin's case.

### Level 2, Employment screening Standards

Irwin asserts that he has a claim against Defendants pursuant to Fla. Stat. § 435.04.  This statute defines the level 2 screening standards.  It provides, in part, that "[a]ll employees in positions designated by law as positions of trust and responsibility shall be required to undergo a security background investigation as a condition of employment and continued employment."  Fla. Stat. § 435.04.  Even if this standard was the standard applicable for employment with a

public school or for issuance of a Florida Educator's certificate, this statute does not give rise to a cause of action.

### Discrimination Against Education Employees

Irwin also alleged that Defendants violated Fla. Stat. § 1000.05(2)(a), the "Florida Educational Equity Act." Fla. Stat. § 1000.05(2)(a) provides protection from "[d]iscrimination on the basis of race, ethnicity, national origin, gender, disability, or marital status against a student or an employee in the state system of public K-20 education. " The purpose of the "Florida Educational Equity Act" is to "provide by law for a state system of schools, courses, classes, and educational institutions and services adequate to allow, for all Florida's students, the opportunity to obtain a high quality education." Fla. Stat. § 1000.01(3). There is no evidence in the record that Irwin was discriminated against upon the grounds stated in the statute. Therefore, Irwin cannot sue Defendants under Fla. Stat. § 1000.05(2)(a).

### b. Common Law Claims

In his response to Defendants motion to dismiss, Irwin makes certain allegations, which I am interpreting as an attempt to assert the following common law torts. (Irwin's Resp. in Opp'n to Mot. to Dismiss 13, 12).

### Breach of Fiduciary Duty

Irwin asserts a claim for "breach of duty." (Irwin's Resp. in Opp'n to Mot. to Dismiss 13). I am interpreting "breach of duty" as a claim for breach of fiduciary duty. The elements of breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damages proximately caused by the breach. *See Williams v. Hunt Bros. Constr., Inc.*, 475 So. 2d 738, 741 (Fla. 2d DCA 1985). There is a fiduciary relationship when "confidence is reposed by one party and a trust accepted by the other." *Id.* at 741. In the present case, none of the

Defendants accepted, expressly or impliedly, Irwin's trust.  Therefore, there can be no breach of fiduciary duty because there was no fiduciary duty in the first place.

### *Fraudulent Concealment or Negligent Misrepresentation*

Irwin asserts claims for "non disclosure of material fact," "knowledge of falsity," "reliance," "negligent misrepresentation," and "false representation."  I am interpreting these claims as claims of fraudulent concealment and negligent misrepresentation.  To have a valid claim of fraudulent concealment or negligent misrepresentation, Irwin must prove: (1) a misrepresentation of a material fact, (2) knowledge of the representor of the misrepresentation or absence of knowledge by the representor of the truth or falsity of the representation; (3) an intention that the representor induce another to act on it; and (4) resulting injury to the party acting in justifiable reliance on the representation.  *Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 264 F. Supp. 2d 1064, 1073 (S.D. Fla. 2003); *Coral Gables Distrib., Inc. v. Milich*, 992 So. 2d 302, 303 (Fla 3d DCA 2008).  Irwin alleges that some Defendants made false statements, i.e., Crist and Lambeth.  (Second Amended Complaint 88, 19; 83, 21).  However, there is no evidence in the record of any reliance by Irwin on Defendants' alleged misrepresentations.  Instead of relying on Defendants' statements, Irwin sought alternative forums to challenge his employment grievance.  Therefore, his fraudulent concealment and negligent misrepresentation claims must fail.

### *Fraud*

Irwin asserts a fraud claim.  In Florida, the essential elements needed for a fraud claim are: (1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induce another's reliance; and (4) consequent injury by the other party acting in reliance on the representation.  *Lopez-Infante v.*

*Union Cent. Life Ins. Co*, 809 So. 2d 13, 14 (Fla. 3d DCA 2002).  Again, Irwin has not shown that

he relied on any of Defendants' statements.  The facts show that Irwin did not believe any of the

statements made by Defendants.  Since Irwin cannot satisfy the essential element of reliance,

Irwin fails to state a fraud claim.

### Conversion

Irwin alleges that Defendants engaged in a "wrongful exercise of control of property."

(Irwin's Resp. to Defs.' Joint Mot. for Summ. 13, 16).  I will assume that Irwin attempts to assert

a claim for conversion against Defendants.  Under florida law, "[c]onversion occurs when a

person asserts a right of dominion over chattel which is inconsistent with the right of the owner

and deprives the owner of the right of possession."  *Estate of Villanueva ex rel. Villanueva v.*

*Youngblood*, 927 So. 2d 955, 959 (Fla. 2d DCA 2006).  However, Irwin has not been deprived of

his right of possession over a *chattel*.  In the absence of chattel, Irwin's conversion claim must

fail.

### Tortious Interference With Employment Contract

Irwin contends that Defendants' actions interfered with his employment contract.  (Irwin's

Resp. to Defs.' Joint Mot. for Summ. 13, 17).  "The elements of a cause of action for tortious

interference with a contractual relationship are: (1) The existence of a contract, (2) The

Defendant's knowledge of the contract, (3) The Defendant's intentional procurement of the

contract breach, (4) The absence of any justification or privilege, (5) Damages resulting from the

breach."  *Fla. Tel. Corp. v. Essig*, 468 So. 2d 543, 544 (Fla. 5th DCA 1985).  Even if Irwin could

show the existence of a contract or the existence of negotiations with his employer, which would

have led to an employment contract, Irwin still fails to evidence Defendant's intent.  *Landry v.*

*Hornstein*, 462 So. 2d 844, 846 (Fla. 3d DCA) (stating that the business relationship need not to

23

be evidenced by an enforceable contract, if the negotiations had progressed beyond a point where the transaction would have been consumed if the defendant had not interfered).  Defendants had no intention to interfere with Irwin's employment. The FDOE granted Irwin his Florida Educator Certificate.  Crist acknowledged that there was no probable cause to deny Irwin's certificate.  All of Defendants' actions were within the scope of their duties.  Therefore, the intent element is missing, and this claim fails.

### *Intentional Infliction of Emotional Distress*

Irwin asserts a claim for intentional infliction of emotional distress.  (Irwin's Resp. to Defs.' Joint Mot. for Summ. 13, 19).  The essential elements needed to assert a claim for intentional infliction of emotional distress are:

> (1) [t]he wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that the emotional distress would likely result;
> (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community;
> (3) the conduct caused emotion [sic] distress; and
> (4) and the emotional distress was severe.

*LeGrande v. Emmanuel*, 889 So. 2d 991, 995 (Fla. 3d DCA 2004).

The *LeGrande* court further analyzed the meaning of outrageous, choosing to apply the Restatement of Torts definition: "conduct as that which is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *LeGrande,* 889 So. 2d at 995 (quoting Restatement 2d of Torts, § 46 (1965).  While Irwin might be very offended with Defendants's actions and statements, their actions and comments are not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*.  Since Irwin cannot

demonstrate that Defendants' behavior was outrageous, he fails to assert an intentional infliction of emotional distress claim.

### Civil Conspiracy

Finally, Irwin asserts that Defendants engaged in civil conspiracy.  (Irwin's Resp. to Defs.' Joint Mot. for Summ. 13, 19).  "The elements that a plaintiff must allege for a conspiracy claim are that (1) two or more parties (2) agree (3) to commit an unlawful act."  *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007).  Irwin did not show that Defendants committed an unlawful act, much less that they agreed to do so.  Therefore, this claim fails as well.

### 5. Declaratory Judgment

In his second amended complaint, Irwin seeks declaratory relief.  (Irwin's Second Am. Compl. 135-37).  Declaratory judgment is only appropriate if Irwin asserts a *prima facie* case for his claims.  The district court must first have a jurisdictional basis in order to provide declaratory relief.  The Declaratory Judgment Act states:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201 (a).

The Declaratory Judgment Act, standing alone, does not confer jurisdictional power upon the court.  The analysis for whether there is a "case or controversy" for declaratory judgment is similar to the "case and controversy" requirement under Article III of the Constitution.  *Emory v. Peller,* 756 F.2d 1547, 1552 (11th Cir. 1985).  The district court must be able to assert original and independent jurisdiction over the case in order to provide declaratory relief.  The *Emory* court

stated, "[t]hat is, under the facts alleged, there must be a substantial continuing controversy between parties having adverse legal interests." *Id*. at 1552. Since Irwin has failed to establish a *prima facie* case, the court lacks the original and independent jurisdiction necessary to provide declaratory relief.

## IV. CONCLUSION

For the reasons set forth above, the motion to dismiss is granted on behalf of FDOE and Blomburg and Crist in their official capacities and is denied on behalf of Blomburg, Crist, Franco, and Lambeth in their individual capacities. The motion for summary judgment is granted on behalf of Blomburg, Crist, Franco, and Lambeth in their individual capacities and denied as moot in all other respects.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 24th day of February 2009.

MARCIA G. COOKE
United States District Judge

cc:

Honorable Ted E. Bandstra

All counsel of record

Ralph Irwin, *pro se* Plaintiff