UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 06-23029-CIV-COOKE/BANDSTRA

RALPH IRWIN

    *Plaintiff*,

v.

MIAMI-DADE COUNTY PUBLIC
SCHOOLS, *et al.*,

    *Defendants*.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT FIU'S MOTION TO DISMISS AND GRANTING
MOTION FOR SUMMARY JUDGMENT IN PART**

This matter is before me on Florida International University Trustees' ("FIU") Motion to Dismiss the Second Amended Complaint ("FIU") [D.E. 229] and Motion for Summary [D.E. 448]. The Motion to Dismiss is granted as to counts 28, 31, 37, and 38 and the Motion for Summary Judgment is granted as to counts 36 and 39.

**I. BACKGROUND**

*Pro se* Plaintiff Irwin filed his Second Amended Complaint ("Complaint") [D.E. 192], seeking, *inter alia*, declaratory and injunctive relief from FIU. FIU is a public university within the State of Florida. Fla. Stat. § 1000.21. Irwin alleges six counts against FIU. The federal claims include a Title VII claim (Count 36) and two § 1983 claims (Count 37 and 38). The state claims consist of an alleged violation of the Florida Public Records Act (Count 39), a violation of Fla. Stat. § 448.045(2006), which prohibits wrongful combinations against workers (Count 28), and what appears to be a defamation claim (Count 31). In addition to the claims raised in his

Second Amended Complaint, Irwin raises several new state tort and constitutional claims in his response to Defendant's Motion to Dismiss. Specifically, Irwin asserts several new violations of Florida statutes, constitutional violations under the First, Fifth, and Fourteenth Amendments, and violations of Title II, VI, and VII.[1] (Irwin Resp. to Mot. to Dismiss at 18-19).

Irwin states that he was hired by FIU to work as a teacher's aide and tutor at Homestead Middle School through a federally-funded grant program called "GEAR UP Homestead." (Second Amended Complaint ¶ 109). He claims that he was reassigned by FIU to work at Aspira South Charter School in response to his having filed discrimination complaints against Miami-Dade County Public Schools and the Florida Department of Education. He also argues that, on August 12, 2004, FIU's "GEAR UP " Administrator dismissed him from Aspira South without providing an explanation. Irwin argues that FIU's reasons for transferring and later discharging him from his job were discriminatory. He also argues that FIU failed to respond to his public records requests and that FIU reported misleading and/or false information that led to a derogatory public record. (Second Amended Complaint ¶ 445).

## II. LEGAL STANDARDS

### A. Motion to Dismiss

"When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted." *Holtzman v. B/E Aerospace, Inc.*, No. 07-80511, 2008 WL 214715, at *1 (S.D. Fla. Jan. 24, 2008) (referring to a Motion to Dismiss filed under Rule 12(b)(6)) (citation omitted).

---

[1] When a *pro se* Plaintiff asserts new allegations in a response to a motion, typically the court should grant leave to amend to add those allegations to the Complaint. In this instance, however, I find that it is unnecessary to allow Irwin to amend because, as will be discussed below, the additional allegations are insufficient to support the new causes of action raised in the response.

The complaint may be dismissed if the facts as pled do not state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1968-69, 1974 (2007) (abrogating the old "unless it appears beyond a doubt that the plaintiff can prove no set of facts" standard and replacing it with a standard requiring "only enough facts to state a claim to relief that is plausible on its face."); *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1037 (11th Cir. 2001)("Pleadings must be something more than an ingenious academic exercise in the conceivable.") (en banc) (quoting *United States v. Students Challenging Regulatory Ag. Proc.*, 412 U.S. 669, 688 (1973)). More simply, dismissal is appropriate if the plaintiff has not "nudged [its] claims across the line from conceivable to plausible." *Twombly*, 127 S.Ct. at 1974. Additionally, *pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and must be liberally construed. *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003); see also *Faulk v. City of Orlando*, 731 F.2d 787, 789-90 (11th Cir. 1984) ("A . . . *pro se* complaint 'however inartfully pleaded must be held to 'less stringent standards than formal pleadings drafted by lawyers'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)).

### B. Motion for Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). According to the U.S. Supreme Court, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. . . [o]nly when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "'may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1984) (stating "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"). The Court, however, must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue of material fact remains. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). Furthermore, the court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1140 (11th Cir. 2007) (citing *Carlin Commc'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

## III. ANALYSIS

### A. Section 1983

FIU's Motion to Dismiss is granted with respect to the claims brought under 42 U.S.C. § 1983 because FIU does not qualify as a "person" as required by § 1983. A cause of action brought under § 1983 has two essential elements: (1) the conduct complained of must have been committed by *a person* acting under color of state law, and (2) the conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or the laws of the United States. *Whitehorn v. Harrelson*, 758 F.2d 1416, 1419 -1420 (11th Cir. 1985) (emphasis added) (citing to 42 U.S.C. § 1983). A state and its agencies are not "persons" within the meaning of § 1983. *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (citing *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989)). Irwin's allegations against FIU brought under § 1983 fail to state a claim since he does not (and cannot) assert that the acts complained of were committed by a person.

In addition to being unable to meet the § 1983 "person" requirement, Irwin's claims are also barred by the Eleventh Amendment. An action brought in federal court against a state or one of its agencies is barred by the Eleventh Amendment. *Scott v. Talyor*, 405 F.3d 1251, 1255 (11th Cir. 2005); *Penhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). FIU is a state agency. "[I]t is undisputed that FIU is considered an arm of the state for Eleventh Amendment purposes." *Ass'n for Disabled Am., Inc. v. Fla. Int'l Univ.*, 178 F. Supp.2d 1291, 1295 (S. D. Fla. 2001). Accordingly, FIU's Motion to Dismiss is granted as to the two § 1983 claims.

### B. Negligence *Per Se*

Irwin alleges that FIU conspired with the School Board to discharge him as an FIU employee because he had submitted discrimination complaints against the School Board and the Florida Department of Education. (Second Amended Complaint ¶ 369). He asserts that FIU violated Fla. Stat. § 448.045, Wrongful Combinations Against Workers, which states:

> If two or more persons shall agree, conspire, combine or confederate together for the purpose of preventing any person from procuring work in any firm or corporation, or to cause the discharge of any person from work in such firm or corporation; or if any person shall verbally or by written or printed communication, threaten any injury to life, property or business of any person for the purpose of procuring the discharge of any worker in any firm or corporation, or to prevent any person from procuring work in such firm or corporation, such persons so combining *shall be deemed guilty of a misdemeanor of the first degree*, punishable as provided in s. 775.082 or s. 775.083.

Fla. Stat. § 448.045 (emphasis added).

Fla. Stat. § 448.045 provides for a criminal penalty, and fails to mention a civil remedy. In *Morrison v. Morgan Stanley Properties*, the court found that Fla. Stat. § 448.045 did not apply to a private cause of action. *Morrison v. Morgan Stanley Prop.*, No. 06-80751, 2007 WL 2316495, at * 10 (S.D. Fla. Aug. 9, 2007) ("When a criminal remedy is available, and no civil remedy is assigned, it is not assumed that a civil remedy exists"). Since Fla. Stat. § 448.045 cannot be relied upon in a private cause of action, Irwin's claim must fail.

### C. Defamation

In Count 31 of the complaint, Irwin claims that FIU wrongly reported misleading and/or false information to the Florida Department of Labor's Agency for Workforce Innovation (FDOL-AWI) that led to a derogatory FDOL-AWI determination. (Second Amended Complaint ¶ 389). According to Irwin, FIU wrongly reported to FDOL-AWI that the reason for his job

separation was due to a disciplinary action and/or because he was an inefficient, ineffective, or non-productive worker. (*Id*. at ¶ 390). Irwin states that the reasons FIU reported to FDOL-AWI to explain his job separation were false, and that FIU engaged in "willful misconduct, gross negligence, and fraudulent misrepresentation." (*Id*. at ¶ 388)

As Defendant FIU points out, Count 31 appears to be a defamation claim. Florida has not waived its Eleventh Amendment immunity in regard to allegations of intentional or malicious libel, slander, or defamation. *Beaulieu v. Bd. of Tr. of Univ. of West Fla.*, 2007 WL 2900332, at *1, 4 (N. D. Fla. Oct. 2, 2007). In Florida, state entities are entitled to absolute immunity when alleged defamatory communications are made within the scope of an employee's employment. *Alfino v. Dep't of Health & Rehab. Serv.*, 676 So. 2d 447, 449 (Fla. 5th DCA 1996). In *Alfino*, a government employee alleged that administrators from the Department of Rehabilitation Services published, "with knowledge of falsity, reckless disregard for the truth, and negligence," a false and defamatory letter that accused him of criminal misconduct. *Id*. at 448. On appeal, the court affirmed that the dismissal of the complaint because the defendants were entitled to immunity from liability. *Id*. at 449. FIU is likewise entitled to immunity from suit for any alleged defamatory communications made to FDOL-AWI in the scope of the FIU employee's duties. FIU's Motion to Dismiss is, therefore, granted as to the state tort claim of defamation.

### D. Title VII

Irwin argues that FIU violated Title VII of the Civil Rights Act of 1964. He states that FIU's justification for discharging him is not plausible: "They're unable to produce any creditable evidence of any wrongdoing on my behalf, thus their motivation for my discharge seems based upon both 1) my race, color and/or nationality, and 2) my past expunged arrest record . . . ." (Second Amended Complaint ¶ 426). He claims that FIU failed to properly

investigate his complaint in violation of Title VII. Irwin filed a claim against FIU with the Equal Employment Opportunity Commission ("EEOC"). Irwin received notice on October 3, 2006, that his claim against FIU (EEOC # 510-2006-03659) was dismissed. (Second Am. Compl.¶ 163).

As the EEOC dismissed Irwin's complaint, he did not obtain a right to sue letter from the EEOC prior to filing this action. The receipt of a right to sue letter is a condition precedent to filing a Title VII action. *See Fouche v. Jekyll Island-State Park Auth.*, 713 F.2d 1518, 1525 (11th Cir. 1983); *see also Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987) (noting that "a plaintiff must generally allege in his complaint that all conditions precedent to the institution of the lawsuit have been fulfilled."). However, receipt of a right to sue letter is not an absolute necessity for filing suit in federal court. "It is clear. . . that receipt of a right-to-sue letter is not a jurisdictional prerequisite to suit, but rather, is a statutory precondition which is subject to equitable modification." *Forehand v. Fla. State Hosp. at Chattahoochee*, 89 F.3d 1562, 1569-70 (11th Cir. 1996). While I could waive this condition precedent, based on the lack of evidence in the record to support Irwin's theory of discrimination, it would be futile to do so. Thus, Irwin fails to maintain a Title VII action against FIU.

### E. Public Records Act

Irwin claims that FIU violated the Florida Public Records Act, Chapter 119, by failing to respond to his document request letters. (Second Amended Complaint ¶ 445-46). Irwin states that FIU ignored his document request letter, sent on January 30, 2007, and "appeal letter," sent on March 5, 2007. Copies of the letters show that Irwin sent a Freedom of Information Act request to FIU, requesting "copies of all documents maintained by FIU that pertain to my past employment, regardless of the format in which the information is stored, or whether or not such

documents specifically identify me by name." [D.E. 45, Ex. 60]. For the alleged tort committed against him, Irwin requests $15,000 in actual and consequential damages, plus punitive damages, as well as attorney's fees and costs. Accordingly, Irwin has sufficiently alleged a cause of action under the Florida Public Records Act. The evidence shows, however, that FIU complied with his request for documents.

Irwin states that FIU "partially complied" with his request on April 27, 2007, but that FIU responded only after he had filed a Writ of Mandamus with this Court. This Court dismissed Irwin's Writ of Mandamus as improper on May 16, 2007, and informed him that he must instead file discovery requests. [D.E. 69].

Under Fla. Stat. § 119.12(1)(2004), the court may award "reasonable costs of enforcement including reasonable attorneys' fees" to a plaintiff who has prevailed in enforcing Florida's public records law. *Office of State Attorney for Thirteenth Judicial Circuit of Fla. v. Gonzalez*, 953 So. 2d 759, 762-63 (Fla. 2d DCA 2007). "If public agencies are required to pay attorney's fees and costs to parties who are wrongfully denied access to the records of such agencies, then the agencies are less likely to deny proper requests for documents." *New York Times Co. v. PHH Mental Health Services, Inc.*, 616 So. 2d 27, 29 (Fla. 1993).

FIU argues that the statute does not require them to provide records within a certain amount of days. Fla. Stat. § 119.07(c) states:

> A custodian of public records and his or her designee must acknowledge requests to inspect or copy records *promptly* and respond to such requests in *good faith*. A good faith response includes making *reasonable efforts* to determine from other officers or employees within the agency whether such a record exists and, if so, the location at which the record can be accessed.

Fla. Stat. § 119.07(c) (emphasis added).

The *Gonzalez* court, after surveying Florida law, concluded that attorney's fees are awarded in two circumstances: "first, when a court determines that the reason proffered as a basis to deny a public records request is improper, and second, when the agency unjustifiably fails to respond to a public records request by delaying until after the enforcement action has been commenced." *Gonzalez*, 953 So. 2d at 764. Delay in providing access to records cannot in itself create liability for attorney's fees under the Public Records law. *Id.* at 765. The undisputed evidence in the record indicates that Irwin received the documents he requested. Irwin cannot sustain a cause of action under the Florida Public Records Act, Chapter 119, because FIU turned over all the documents in its possession. Mrs. Cuesta-Gomez's affidavit states that FIU turned over to Irwin all the documents he requested. (Cuesta-Gomez's Aff. ¶ 5). The affidavit also states that, once the records were turned over, Irwin made no further document requests. *Id.* As there is no evidence that FIU denied Irwin's public records request or that it purposefully and unjustifiably delayed complying with the request until after Irwin filed suit, Irwin cannot sustain a claim against FIU for violating the Public Records Act. Irwin also is not entitled to costs and attorney's fees under the statute. I, therefore, grant FIU's motion for summary judgment on Irwin's Public Records Act claim.

### F. New State Tort Claims Against FIU

In Irwin's Response to FIU's Motion to Dismiss, he asserts several new violations of Florida statutory law, which were not present in his Second Amended Complaint. Normally, I would disregard the new allegations and analyze the Defendant's Motion to Dismiss under the assertions set forth in the Second Amended Complaint. *See Bruhl v. Price Waterhousecoopers Int'l*, No. 03-23044, 2007 WL 997362, at *4 (S.D. Fla. Mar. 27, 2007) (noting that a plaintiff may not supplant allegations made in their complaint with new allegations raised in a response to

a motion to dismiss); accord *Walker v. City of Orlando*, No. 07-651, 2007 WL 1839431, at *5 (M.D. Fla. Jun. 26, 2007) (limiting consideration to the allegations contained in the complaint, even when new allegations were raised in response to a Motion to Dismiss). This case, however, involves a *pro se* plaintiff; therefore, the court must liberally construe Irwin's response. When *pro se* plaintiffs raise additional allegations in their filings, these allegations should be construed as a motion to amend the complaint, and the motion should be granted. *Newsome v. Chatham County Detention Ctr.*, 256 Fed. App'x 342, 344 (11th Cir. 2007). The court, in a *pro se* case, should generally allow the plaintiff leave to amend his complaint.

      I am, nonetheless, denying Irwin leave to amend his complaint for two distinct reasons. First, Irwin has already had two opportunities to allege new facts or law, which were not included in his original complaint. Irwin filed his Complaint on December 15, 2006, his First Amended Complaint on July 2, 2007, and his Second Amended Complaint on October 10, 2007. In addition to having opportunities to assert his new claims, Irwin also had ample time to make his assertions since over twenty-one months expired between his initial complaint and his Second Amended Complaint. Irwin should have included his additional claims in either his First or Second Amended Complaint, not in his response to Defendant's Motion to Dismiss. Second, even if Irwin were permitted to introduce new state law claims, these new claims would fail.

      Irwin has alleged several violations of Florida statutes under a theory of negligence *per se*. He contends that FIU violated Fla. Stat. §§ 20.20; 443.012; 443.151; 433.171; 768.72(2)(b); 448.102; 447.503; 435.06; 448.045; 760.10(1)-(5),(7),(8); 760.01-760.11; 120.52(8); 120.569; 120(1)(e)(2); and 1000.05(2)(a).[2] (Irwin Resp. to Mot. to Dismiss at 18). These statutes do not

---

[2] Irwin's reliance upon Fla. Stat. §§ 20.50; 443.012; 443.151; and 443.171 is misplaced. These statutes address the organization, procedure, powers, and duties for the Agency for Workforce Innovation and the Unemployment Appeals Commission. Irwin has not

aid Irwin in asserting a state tort claim.

Irwin is suing FIU for violations of state statutes and tort law in federal court. FIU is an agency of the state. The state of Florida has been very progressive in waiving sovereign immunity; however, Florida preserved sovereign immunity in many circumstances. Fla. Stat. § 768.28 sets forth Florida's waiver of sovereign immunity for tort actions, with several exceptions. One of the exceptions is filing suit in federal court:

> No provision of this section . . . shall be construed to waive the immunity of the state or any of its agencies *from suit in federal court*, as such immunity is guaranteed by the Eleventh Amendment to the Constitution of the United States, unless such immunity is explicitly and definitely stated to be a waiver of the immunity of the state and its agencies form suit in federal court.

Fla. Stat. § 768.28(18) (emphasis added).

Irwin cannot assert state tort claims against an arm of the state in federal court, unless there has been an "explicitly and definitely stated waiver" of Eleventh Amendment immunity. Fla. Stat. § 768.28(18); s*ee also Hamm v. Powell*, 874 F.2d 766, 770 n.3 (11th Cir. 1989). Irwin asserts violations of several Florida statutes; however, he does not claim that there is a waiver of Eleventh Amendment immunity with respect to these statutes. Even if there was not an Eleventh Amendment bar to proceeding under the statutes he cites, he cannot assert these statutory violations because the statutes cited are not applicable to his case.

Fla. Stat. § 768.72 provides a procedural framework for punitive damages. Subsection (2) states: "A defendant may be held liable for punitive damages only if the trier of fact, based

---

alleged that he was denied unemployment compensation. Therefore, I will not analyze Irwin's negligence *per se* claims under these statutes.
    Irwin's reliance upon Fla. Stat. §§ 120.52(8); 120.569; and 120.57(1)(e)(2) is also misplaced. These statutes address procedures for disputes before an administrative law judge. Fla. Stat. § 120.57(1)(e)(2) addresses when an agency may act upon unadopted rules. These statues are not applicable to Irwin's case.

on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence." Fla. Stat. § 768.72(2). Irwin has not demonstrated that he can assert a claim for willful misconduct or gross negligence. Further, in the same response to FIU's Motion to Dismiss, where Irwin alleges that FIU violated Florida's punitive damages statute, he concedes that FIU cannot be sued for punitive damages: "Punitive damages are prohibited against state entities . . . I'll stipulate as to counsel's statements regarding this matter . . . ." (Irwin Resp. to Mot. to Dismiss at 25). Therefore, Irwin is not entitled to punitive damages from FIU.

Fla. Stat. § 448.102 states: "An employer may not take any retaliatory personnel action against an employee because the employee has. . . disclosed, or threatened to disclose, to any appropriate governmental agency . . . an activity, policy, or practice of the employer that is in violation of a law, rule or regulation." Fla. Stat. § 448.102 This is the private employer "Whistle-blower's Act." Irwin should have relied upon Fla. Stat. § 112.3187 - the public agency "Whistle-blower's Act." It is clear that this statute seeks to protect employees who report workplace violations. I will analyze Irwin's claims under Fla. Stat. § 112.3187 since he is making allegations against a public agency.

Irwin suggests that retaliatory action was taken against him, including the termination of his position with "GEAR UP," when FIU learned of several complaints he filed against the Miami-Dade School System. However, the factual record does not support Irwin's theory of the case. Irwin has not produced any evidence indicating that retaliatory actions were taken against him as a result of his employment grievance claims against the Miami-Dade County School System. Irwin states, in his deposition, that he does not have any personal knowledge that FIU administrators had any contact with Miami-Dade School board authority or staff. (Irwin Dep. at 333-34). Further, he states that he does not have any personal knowledge that Miami-Dade

School Board instructed FIU to terminate his employment. (*Id.* at 334). FIU is a government agency; it cannot act without the direction and performance of those who are employed under the agency. The factual record indicates that the director of the "GEAR UP" program, Nosti, did not have any contact with Reineke, the principle of Homestead Middle School. (Nosti Aff. at 5). Nosti did not become aware of Irwin's employment grievances against the Miami-Dade County School System until Irwin mailed Nosti a letter alleging that FIU unfairly denied him an assistant teacher's position and informing Nosti of his disputes with Reineke. (Nosti Aff. at 5).

In addition to showing an absence of retaliatory behavior, the record also indicates that Irwin failed to apply for a position for the following academic year of the program and, therefore, could not have been offered continued employment with the "GEAR UP" program. The "GEAR UP" program sent letters to Irwin notifying him of his employment start and end dates. Irwin acknowledges that he received a letter from FIU dated May 20, 2004. (Def.'s Statement of Undisputed Material Facts ¶ 7; Irwin Dep. at 321). The letter specifically stated: "please do not hesitate to apply for the position of Program Assistant for the next academic year, starting August 15th." *Id.* Irwin also acknowledges that he did not apply for an assistant position for the upcoming academic year. (Irwin Dep. at 324). Since Irwin cannot show that FIU retaliated against him, he cannot bring a negligence *per se* claim under Fla. Stat. § 112.3187.

Irwin asserts that FIU violated Fla. Stat. § 447.503, which sets forth procedural requirements for fair labor practice disputes brought under Fla. Stat. § 447.501. Section 447.503 does not seem applicable to this case as this statute focuses on labor unions. The intent of Chapter 447, Florida Statutes, is "to regulate the activities and affairs of labor unions, their officers, agents, organizers and other representatives, in the manner, and to the extent hereafter set forth." Fla. Stat. § 447.01(2). Based on the record, there does not appear to be a labor union

involved in Irwin's dispute. Therefore, this statute is not applicable to Irwin's case against FIU.

Irwin brings a separate claim under Fla. Stat. § 435.06, which addresses when an employee can be terminated for failure to comply with an employment screening and actions that must be taken if an employee does not meet screening criteria. This statute does not assist Irwin in asserting a negligence *per se* claim. Irwin was not terminated from his position at FIU. His employment term simply came to an end. Therefore, Irwin cannot sue FIU under Fla. Stat. § 435.06.

Irwin brings a negligence *per se* claim under Fla. Stat. § 760.10 (1)-(5),(7),(8). Fla. Stat. § 760.10 discusses unlawful actions by an "employer, employment agency, labor organization, or joint labor-management committee." It provides: "It is an unlawful employment practice for an employer. . . to discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status." Fla. Stat. § 760.10(1)(a). Irwin claims that he was discriminated by FIU "due to [his] race, color, and /or national origin." (Second Amended Complaint ¶ 432). When Irwin was asked at deposition to describe specifically how he was discriminated against, he referenced the allegations in his complaint that he was "the only White, non-Hispanic 'GEAR UP' employee." (Irwin Dep. at 346). However, in Irwin's deposition, he acknowledges that there were other white employees in FIU's "GEAR UP" program. *Id*. at 348. The record also indicates that there were older "GEAR UP" employees working for the FIU program. "In 2004, at the time of Mr. Irwin's employment, he was not the oldest GEAR UP employee. Mr. Gilbert Perez, at 69 years old, served as the Senior Program Assistant." (Nosti Aff. ¶ 17).

Irwin's failure to apply for a position for the following academic year was the reason that

Irwin was not offered continued employment with the "GEAR UP" program. The "GEAR UP" program sent letters to Irwin notifying him of his employment start and end dates. (Irwin Dep. at 321). Irwin acknowledges that he did not apply for an assistant position for the following academic year. (Irwin Dep. at 324-27). Based on Irwin's conclusory allegations and the factual record, Irwin may not maintain a cause of action under Fla. Stat. § 760.10 (1)-(5),(7),(8). Irwin alleges that FIU is liable under Fla. Stat. § 760.01-11, the "Florida Civil Rights Act of 1992." The purpose of the "Florida Civil Rights Act of 1992" is to "secure for all individuals within the state freedom from discrimination because of race, color, religion, sex, national origin, age, handicap, or marital status and thereby to protect their interest . . . ." Fla. Stat. § 760.01(2). Irwin has not sufficiently alleged discrimination against FIU. Irwin makes allegations that he was discriminated against on the basis of race, sex, national origin, and age. However, as I have stated above, the evidence before me does not support Irwin's allegations. Since Irwin was not fired from FIU, he cannot show that his employment was terminated for a discriminatory reason. Thus, Irwin fails to maintain a claim under the Florida Civil Rights Act.

Irwin also alleges that FIU violated Fla. Stat. § 1000.05(2)(a), the "Florida Educational Equity Act." Fla. Stat. § 1000.05(2)(a) also provides protection from "[d]iscrimination on the basis of race, ethnicity, national origin, gender, disability, or marital status against a student or an employee in the state system of public K-20 education . . . ." The record shows that Irwin did not resume his position as an assistant for the "GEAR UP" program because he did not apply for a position for the upcoming year. The facts do not indicate that FIU discriminated "on the basis of race, ethnicity, national origin, gender, disability, or marital status." *Id.* Therefore, Irwin cannot sue for negligence *per se* under Fla. Stat. § 1000.05(2)(a).

Irwin also asserts a claim of common law fraud under Count 31 of his Second Amended

Complaint. He asserts: "1) FIU made false representations concerning material facts regarding my discharge to FDOL-AWI, 2) FIU knew the representations were false, 3) FIU made them with the intention the representations would induce FDOL-AWI to act upon it, and 4) I was injured as a result of FDOL-AWI acting upon FIU's false representations." (Irwin Resp. to Mot. to Dismiss at 22-3). In Florida, the essential elements needed for a fraud claim are: (1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false: (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the representation. *Lopez-Infante v. Union Cent. Life Ins.* Co, 809 So. 2d 13,14 (Fla. 3d DCA 2002). Irwin misconstrues the elements of fraud. He asserts that FDOL-AWI relied upon FIU's false misrepresentations, however, he also claims that he was the individual who suffered the injury. The last element of fraud is "injury by the other party acting in reliance on the representations." *Id.* In this case, Irwin would need to rely upon FIU's statements, not FDOL-AWI. Since Irwin cannot assert the essential elements of fraud, he fails to state a cause of action for common law fraud.

### G. Declaratory Judgment

In his Second Amended Complaint, Irwin seeks declaratory relief against FIU for violations of his constitutional rights. (Second Amended Complaint ¶ 539). Declaratory judgment is inappropriate since Plaintiff fails to assert a *prima facie* case under §1983 or state tort law. The district court must first have a jurisdictional basis in order to provide declaratory relief. The Declaratory Judgment Act states:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201 (a).

The Declaratory Judgment Act, standing alone, does not confer jurisdictional power upon the court. The analysis for whether there is a "case or controversy" for declaratory judgment is similar to the "case and controversy" requirement under Article III of the Constitution. *Emory v. Peller,* 756 F.2d 1547,1552 (11th Cir. 1985). The district court must be able to assert original and independent jurisdiction over the case in order to provide declaratory relief. The *Emory* court stated, "[t]hat is, under the facts alleged, there must be a substantial continuing controversy between parties having adverse legal interests." *Id*. at 1552. Since the Plaintiff has failed to establish a *prima facie* case, the court lacks the original and independent jurisdiction necessary to provide declaratory relief.

## V. CONCLUSION

Accordingly, FIU's Motion to Dismiss [D.E. 229] is granted as to counts 28, 31, 37, and 38 and denied as to counts 36 and 39. The motion for summary judgment [D.E. 448] is granted as to counts 36 and 39 and denied as moot in all other respects.

**DONE AND ORDERED** in Miami, Florida, this 24th day of February 2009.

_____
MARCIA G. COOKE
United States District Judge

cc:
Honorable Ted E. Bandstra
All counsel of record
Ralph Irwin, *pro se* Plaintiff