UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 06-23029-CIV-COOKE/BANDSTRA

RALPH IRWIN

    *Plaintiff*,

v.

MIAMI-DADE COUNTY PUBLIC
SCHOOLS, *et al.,*

    *Defendants*.

_____/

## ORDER GRANTING DEFENDANT WALKER'S MOTION TO DISMISS

This matter is before me on Defendant's Motion to Dismiss Second Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [D.E. 268]. For the reasons stated below, the Motion to Dismiss is granted.

### I. BACKGROUND

*Pro se* Plaintiff Ralph Irwin filed his Second Amended Complaint [D.E. 192] on October 10, 2007, seeking, *inter alia*, damages from Gary Walker, a Federal Employee Defendant. During the relevant time period, Walker was the Director of United States Department of Education's ("USDOE") Office of Civil Rights ("OCR"), Southern Division. The Plaintiff's claims against Walker are brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and focus on the alleged acts and omissions in connection with the handling of Plaintiff's complaints regarding abusive employment practices.

## II.  LEGAL STANDARDS

### A.  Motion to Dismiss – Fed. R. Civ. P. 12(b)(1)

A district court is powerless to hear a matter where subject matter jurisdiction is lacking. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974-75 (11th Cir. 2005) (noting that lower federal courts are courts of limited jurisdiction)(citing to *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999)).  A plaintiff bears the burden of establishing subject matter jurisdiction. *Sweet Pea Marine, Ltd., v. APJ Marine, Inc.*, 411 F.3d 1242, 1248 n.2 (11th Cir. 2005).  A defendant bringing a motion to dismiss under Fed. R. Civ. P. 12(b)(1), may assert a "facial attack" to jurisdiction whereupon the court will look to the complaint to determine whether the plaintiff has sufficiently alleged subject matter jurisdiction. *Lawrence v. Dumbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990).  "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion – the court must consider the allegations of the complaint to be true." *Id.* at 1529.  A defendant may also bring a "factual attack" challenging "the existence of subject matter jurisdiction in fact, irrespective of the pleadings . . . ." *Id.* (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980), cert. denied, 449 U.S. 953 (1980)).  In contrast to a facial attack, when a factual attack is brought, "the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56[,]" by examining and weighing evidence related to the court's subject matter jurisdiction – its authority to hear the case – and giving no presumptiveness of truth to the plaintiff's allegations. *Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.) (1981), cert. denied, 454 U.S. 897 (1981)).

### B.  Motion to Dismiss – Fed. R. Civ. P. 12(b)(6)

"When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted."

*Holtzman v. B/E Aerospace, Inc.,* No. 07-80511, 2008 WL 214715, at *1 (S.D. Fla. Jan. 24, 2008) (referring to a Motion to Dismiss filed under Rule 12(b)(6)) (citation omitted). The complaint may be dismissed if the facts as plead do not state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1968-69, 1974 (2007) (abrogating the old "unless it appears beyond a doubt that the plaintiff can prove no set of facts" standard and replacing it with a standard requiring "only enough facts to state a claim to relief that is plausible on its face."); *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1037 (11th Cir. 2001) ("Pleadings must be something more than an ingenious academic exercise in the conceivable.") (en banc) (quoting *United States v. Students Challenging Regulatory Ag. Proc.*, 412 U.S. 669, 688 (1973)). More simply, dismissal is appropriate if the plaintiff has not "nudged [its] claims across the line from conceivable to plausible." *Twombly*, 127 S.Ct. at 1974.

I must also keep in mind that "[*p*]*ro se* pleadings are to be held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003); *see also Faulk v. City of Orlando*, 731 F.2d 787, 789-90 (11th Cir. 1984) ("A . . . *pro se* complaint 'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)).

### III.  ANALYSIS

#### A.  *Bivens* Claim Against Walker

Walker argues that Irwin's *Bivens* claim is foreclosed since Congress has provided for an adequate alternative remedy. In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court recognized the existence of a private right of action against government officials, in their individual capacity, for constitutional violations, despite the absence of any statute conferring such a right. A *Bivens* cause of action is foreclosed in two

situations: (1) where a defendant is able to "demonstrate special factors counselling hesitation in the absence of affirmative action by Congress" and (2) where "Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective." *Carlson v. Green*, 446 U.S. 14, 18-19 (1980) (emphasis in original) (quoting from *Bivens*, 403 U.S. at 396-97). For example, the existence of a right to judicial review under the Administrative Procedure Act, 5 U.S.C. §§ 701, *et. seq.* ("APA"), is sufficient to preclude an individual from bringing a *Bivens* action. *Miller v. U.S. Dep't of Agric. Farm Servs. Agency*, 143 F.3d 1413, 1416 (11th Cir. 1998).

Walker analogizes this case to *Schweiker v. Chilicky*, 487 U.S. 412 (1988). In *Schweiker*, plaintiffs challenged the disruption of their Social Security disability benefits, bringing their claims directly against the persons who denied the benefits. *Schweiker*, 487 U.S. at 414-419. The Court concluded that the extensive procedural structure that existed to afford persons denied benefits an opportunity to appeal such decisions foreclosed a *Bivens* cause of action. *Id.* at 414. The Court reasoned that this administrative appellate scheme was a Congressional substitute for recovery directly under the Constitution. *Id.* at 425. In a similar case, the Supreme Court declined to extend the *Bivens* doctrine to permit a claim to be brought by a federal employee against his employer. *Bush v. Lucas*, 462 U.S. 367, 368 (1983). Again, the Court focused on the comprehensive remedial structure which would provide the plaintiff the opportunity for a remedy against his employer. *Id.* at 385. *Scheweiker* and *Bush* show that where a federal entity injures an individual in a context where a comprehensive remedial structure exists to redress the alleged wrong, a *Bivens* action against the individual employees of the federal entity is foreclosed.

In this case, Irwin has alleged that Walker, an employee of the USDOE, violated his rights under the Constitution. Specifically, Irwin claims that Walker violated his First, Fifth, and

Fourteenth Amendment rights through his acts of nonfeasance, malfeasance, gross negligence, and willful misconduct. *E.g.,* Second Am. Compl. ¶¶ 526 (claiming that Walker failed to ensure that his employees respected Plaintiff's constitutional rights); ¶ 528 (asserting that Walker could not delegate responsibility for investigating his complaints and complying with civil rights statutes); ¶ 529 (alleging that Walker's inaction served to cover up other Defendants' violations).

These allegations are within the ambit of the APA, and thus must be pled under the APA. *See* 5 U.S.C. § 706. Because Congress has provided an alternative remedy for Plaintiff's alleged injuries, it would be inappropriate to apply the judicially-created *Bivens* doctrine to this case. *See Miller*, 143 F.3d at 1416-17. Accordingly, the *Bivens* claim against Walker is dismissed.

**B. New State Tort Claims Against Walker**

In Irwin's response to Walker's motion to dismiss, he asserts several new state law claims, which were not present in his second amended complaint. [D.E. 377]. Normally, I would disregard the new allegations and analyze the Defendant's motion to dismiss under the assertions set forth in the second amended complaint. *See Bruhl v. Price Waterhousecoopers Int'l*, No. 03-23044, 2007 WL 997362, at *4 (S.D. Fla. Mar. 27, 2007) (noting that plaintiffs may not supplant allegations made in their complaint with new allegations raised in a response to a motion to dismiss); accord *Walker v. City of Orlando*, No. 07-651, 2007 WL 1839431, at *5 (M.D. Fla. Jun. 26, 2007) (limiting consideration to the allegations contained in the complaint, even when new allegations were raised in response to a motion to dismiss). This case, however, involves a *pro se* plaintiff; therefore, the court must liberally construe Irwin's response. When *pro se* plaintiffs raise additional allegations in their filings, these allegations should be construed as a motion to amend the complaint, and the motion should be granted. *Newsome v. Chatham County Detention Ctr.*, 256 Fed. App'x. 342, 344 (11th Cir. 2007). The court, in a *pro se* case, should generally allow the plaintiff leave to amend his

complaint.

I am, nonetheless, denying Irwin leave to amend his complaint for two distinct reasons. First, Irwin has already had two opportunities to allege new facts or law, which were not included in his original complaint. Irwin filed his original complaint on December 15, 2006, his first amended complaint on July 2, 2007, and his second amended complaint on October 10, 2007. [D.E. 1, 88, 192]. In addition to having multiple opportunities to assert his new claims, Irwin also had ample time to make his assertions since over ten months expired between his initial complaint and his second amended complaint. Irwin should have included his additional claims in either his first or second amended complaint, not in his response to Defendant's Motion to Dismiss. Second, even if Irwin were permitted to introduce new state law claims, these new claims would fail.

Irwin alleges, in his response to Defendant's Motion to Dismiss, that Walker violated several Florida statutes and committed torts. (Irwin's Resp. in Opp'n to Mot. to Dismiss at 19-20). First, I will analyze Irwin's negligence *per se* claims, and then his tort claims.

### a. Statute Based Torts

#### *Negligence Per Se*

Irwin asserts that Walker committed negligence *per se*. (Irwin's Resp. in Opp'n to Mot. to Dismiss at 19). It is unclear whether Irwin relies on all the statutes cited under the caption relating to negligence *per se* to make his claim or if the statutes are new and independent claims. I will assume that the statutes Walker allegedly violated support Irwin's negligence *per se* claim and are also independent claims.

Under Florida law, negligence *per se* is the "violation of any other statute which establishes a duty to take precautions to protect a particular class of persons from a particular type of injury." *DeJesus v. Seaboard Coast Line R. Co.*, 281 So. 2d 198, 201 (Fla. 1973). Therefore, to have a valid

claim of negligence *per se* claim, a plaintiff must establish that "he is of the class the statute was intended to protect, that he suffered injury of the type the statute was intended to prevent, and that the violation of the statute was the proximate cause of injury." *Id.* at 201.

Irwin does not identify a specific class protected by the statutes. Moreover, I find that Irwin fails to assert valid claims under the statutes cited. His negligence *per se* claim, therefore, must fail.

### *Unemployment Compensation*

Irwin asserts that Walker violated Fla. Stat. §§ 20.50; 443.012; 443.151; and 443.17. These statutes address the organization, procedure, powers, and duties for the Agency for Workforce Innovation and the Unemployment Appeals Commission. Irwin has not alleged that he was denied unemployment compensation. Therefore, Irwin is unable to bing negligence *per se* claims under these statutes.

### *Gross Negligence*

Irwin alleges that Walker committed gross negligence under Fla. Stat. §768.72(2)(b). (Irwin's Resp. in Opp'n to Mot. to Dismiss at 19). Florida courts recognize both gross and wanton negligence. "Gross negligence has been defined as the equivalent of slight care, that course of conduct which a reasonable and prudent person would know would probably and most likely result in injury to person or property." *Farrell v. Fisher*, 578 So. 2d 407, 409 (Fla. 4th DCA 1991). "Wanton negligence, on the other hand, is *no* care or the absence of any care and is only one degree removed from willful misconduct." *Id.* at 409. (emphasis in original). Under either form of negligence, the defendant mush breach a duty of care; the deciding factor between the two is exactly what amount of care was breached. Regardless of the negligence standard, Irwin fails to assert a valid negligence claim against Walker.

The USDOE-OCR has a 180-day filing limitation for complaints. Irwin did not file his complaints until well past the filing deadline. Irwin contends that Walker unjustly denied granting a waiver of the filing deadline with the USDOE. The facts alleged in Irwin's Second Amended Complaint reveal, however, that Walker did not breach his duty of care. Irwin alleges that Walker violated the guidelines listed in USDOE-OCR's *Case Resolution & Investigation Manual*: "'If a complaint is not filed in a timely manner, OCR will notify the complainant of the opportunity to request a waiver of the 180-day filing requirement. The Office Director, or designee, may grant a waiver of the 180-day filing requirement . . . .'" (Second Am. Compl. ¶ 189) (emphasis omitted). Irwin tries to establish a duty of care based upon USDOE guidelines. The guidelines state, however, that the "Office Director may grant a waiver," not shall grant a waiver. *Id.* The guidelines give the Office Director discretion to grant or deny the waiver. Irwin, therefore, cannot bring a gross negligence claim against Walker.

### *Retaliatory Personnel Action*

Irwin alleges that Walker engaged in retaliatory personnel action in violation of Fla. Stat. § 448.102. Section 448.102 states: "An employer may not take any retaliatory personnel action against an employee because the employee has disclosed, or threatened to disclose, to any appropriate governmental agency an activity, policy, or practice of the employer that is in violation of a law, rule or regulation." Fla. Stat. Ann. § 448.102. This is the private employer "Whistle-blower's Act." Irwin should have relied upon Fla. Stat. § 112.3187 - the public agency "Whistle-blower's Act."

I will analyze Irwin's claims under Fla. Stat. § 112.3187 since he is making allegations against public agency employees. Irwin has not produced any evidence that Walker took retaliatory actions against him. Irwin acknowledges, at his deposition, that his claims were untimely: "The Complaints that I submitted - were untimely with regard to the U.S. Department of Education, yes."

(Irwin's Dep. at 377). As noted above, Walker had discretion to grant or deny Irwin a waiver of the filing deadline with respect to those claims. Nothing in the record indicates that Walker abused his discretion or retaliated against Irwin by denying him the waiver. Thus, Irwin's negligence *per se* action under § 112.3187 is dismissed.

### *Charges of Unfair Labor Practices*

Irwin asserts that Walker violated Fla. Stat. § 447.503, which sets forth procedural requirements for fair labor practice disputes brought under Fla. Stat. § 447.501. Section 447.503 does not seem applicable to this case as this statute focuses on labor unions. The intent of Chapter 447, Florida Statutes, is "to regulate the activities and affairs of labor unions, their officers, agents, organizers and other representatives, in the manner, and to the extent hereafter set forth." Fla. Stat. § 447.01(2). Based upon the factual record, there does not appear to be a labor union involved in Irwin's dispute. Therefore, this statute is not applicable to Irwin's case against Walker.

### *Exclusion from Employment*

Irwin alleges that Walker acted in violation of Fla. Stat. § 435.06. Fla. Stat. § 435.06 addresses when an employee can be terminated or denied a position for failure to comply with an employment screening and actions that must be taken if an employee does not meet screening criteria. Irwin cannot allege that Walker excluded him from employment. The record indicates that Irwin was not rehired by FIU's "GEAR UP" program for the next academic year because he did not reapply for a position. The "GEAR UP" program sent letters to Irwin notifying him of his employment start and end dates. Irwin acknowledges that he received a letter from FIU dated May 20, 2004. (Irwin's Dep. at 321). The letter specifically stated: "please do not hesitate to apply for the position of Program Assistant for the next academic year, starting August 15th." *Id.* Irwin also acknowledges that he did not apply for an assistant position for the upcoming academic year. (Irwin

Dep. at 324). Furthermore, Walker was not in a position to exclude Irwin from his employment with the Miami-Dade County Public School System. Thus, Irwin fails to bring a negligence *per se* claim under Fla. Stat. § 435.06

### *Wrongful Combinations Against Workers*

Irwin asserts an additional claim relying upon Florida's Wrongful Combinations Against Workers Statute, Fla. Stat.§ 448.045. The pertinent part of the statute states: "If two or more persons shall agree, conspire, combine, or confederate together for the purpose of preventing any persons from procuring work in any firm or corporation . . . *such persons so combining shall be deemed guilty of a misdemeanor of the first degree*, punishable as provided in s. 755.082 or s. 775.083." Fla. Stat. § 448.045 (emphasis added). This statute provides for a criminal punishment, but it does not discuss civil remedies. In *Morrison v. Morgan Stanley Properties*, the court found that Fla. Stat. § 448.045 did not apply to a private cause of action. *Morrison v. Morgan Stanley Prop.*, No. 06-80751, 2007 WL 2316495, at * 10 (S.D. Fla. Aug. 9, 2007) ("When a criminal remedy is available, and no civil remedy is assigned, it is not assumed that a civil remedy exists"). Since Fla. Stat. § 448.045 cannot be sued upon in a private cause of action, Irwin's claim fails.

### *Unlawful Employment Practices*

Irwin brings a negligence *per se* claim under Fla. Stat. § 760.10 (1)-(5),(7),(8). Fla. Stat. § 760.10 discusses unlawful actions by an "employer, employment agency, labor organization, or joint labor-management committee." Fla. Stat. § 760.10. It provides: "It is an unlawful employment practice for an employer. . . to discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status." Fla. Stat.§ 760.10(1)(a). First, Walker was not Irwin's employer. Second, Irwin's claim with the USDOE-OCR was time barred; therefore, Walker

did not have a duty to investigate Irwin's complaint. Irwin acknowledges, however, that Walker investigated his complaints: "without 'officially' accepting my submitted complaints, WALKER authorized an unofficial investigation to determine the liability of the parties." (Second Am. Compl. ¶ 197) (emphasis omitted). Last, Irwin has not alleged on what grounds Walker discriminated against him. Thus, Irwin is unable bring a negligence *per se* claim under Fla. Stat. § 760.10.

### *Florida Civil Rights Act*

Irwin asserts a claim pursuant to the Florida Civil Rights Act, citing Fla. Stat. § 760.01 to Fla. Stat. § 760.10. Fla. Stat. § 760.01 states the general purpose of the act, which is "to secure for all individuals within the state freedom from discrimination because of race, color, religion, sex, national origin, age, handicap, or marital status." Walker did not discriminate against Irwin. As stated above, Walker investigated Irwin's claims when he was under no duty to investigate. The facts demonstrate that Walker did not discriminate against Irwin; rather, he gave Irwin the benefit of the doubt and performed an investigation before dismissing his complaint. Therefore, Irwin does not have a valid Florida Civil Rights Act claim against Walker.

### *Invalid Exercise of Delegated Legislative Authority*
### *Decisions Which Affect Substantial Interests*
### *Demonstrated Validity of Action*

Irwin's reliance upon Fla. Stat. §§ 120.52(8); 120.569; and 120.57(1)(e)(2) is misplaced. These statutes address procedures for disputes before an administrative law judge. Fla. Stat. § 120.57(1)(e)(2) addresses when an agency may act upon unadopted rules. Walker was not acting upon unadopted rules. Further, these statutes apply to state agencies, not federal agencies. Fla. Stat § 120.52(b)(1) defines an agency as "each state officer and state department, and each department described in s. 20.02." Fla. Stat. § 120.52(b)(1). Thus, these statutes are not applicable to Irwin's

case.

### *Discrimination Against Education Employees*

Irwin also alleged that Walker violated Fla. Stat. § 1000.05(2)(a), the "Florida Educational Equity Act." Fla. Stat. § 1000.05(2)(a) provides protection from "[d]iscrimination on the basis of race, ethnicity, national origin, gender, disability, or marital status against a student or an employee in the state system of public K-20 education." The purpose of the "Florida Educational Equity Act" is to "provide by law for a state system of schools, courses, classes, and educational institutions and services adequate to allow, for all Florida's students, the opportunity to obtain a high quality education." Fla. Stat. § 1000.01(3). There is no evidence in the record that Irwin was discriminated against upon the grounds stated in the statute. Therefore, Irwin cannot sue Walker under Fla. Stat. § 1000.05(2)(a).

    b.  **Common Law Torts**

In his response to Walker's motion to dismiss, Irwin makes certain allegations, which I am interpreting as an attempt to assert the following common law torts. (Irwin's Resp. in Opp'n to Mot. to Dismiss at 20).

### *Breach of Fiduciary Duty*

Irwin asserts a claim for "breach of duty" and "duty to disclose based upon relationship." (Irwin's Resp. in Opp'n to Mot. to Dismiss at 20). I am interpreting "breach of duty" as a claim for breach of fiduciary duty. The elements for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damages proximately caused by the breach. *See Williams v. Hunt Bros. Constr., Inc.*, 475 So. 2d 738, 741 (Fla. 2d DCA 1985). There is a fiduciary relationship when "confidence is reposed by one party and a trust accepted by the other." *Id.* at 741. In the present case, Walker did not accept, expressly or impliedly, Irwin's trust. Therefore, there can

be no breach of fiduciary duty because there was no fiduciary duty in the first place. Thus, Irwin's claims under "breach of duty" and "duty to disclose based upon relationship" fail.

### *Fraudulent Concealment or Negligent Misrepresentation*

Irwin asserts claims for "non disclosure of material fact," "knowledge of falsity," and "negligent misrepresentation." I am interpreting these claims as claims for fraudulent concealment and negligent misrepresentation. To have a valid claim for fraudulent concealment or negligent misrepresentation, Irwin must prove: (1) a misrepresentation of a material fact, (2) knowledge of the representor of the misrepresentation or absence of knowledge by the representor of the truth or falsity of the representation; (3) an intention that the representor induce another to act on it; and (4) resulting injury to the party acting in justifiable reliance on the representation. *Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 264 F. Supp. 2d 1064, 1073 (S.D. Fla. 2003); *Coral Gables Distrib., Inc. v. Milich*, 992 So. 2d 302, 303 (Fla 3d DCA 2008). There is no evidence in the record that Irwin relied on Walker's statements. Irwin appealed his complaint to other officials at USDOE-OCR instead of relying on Walker's statements that Irwin would be unable to file an official complaint. Irwin states: "On July 6, 2007 at WALKER'S suggestion, I submitted a 24-page complaint letter to BLACK addressing all allegations as described . . . ." (Second Am. Compl. ¶ 207). Further, Irwin sought alternative forums to challenge his employment grievance. Therefore, his fraudulent concealment and negligent misrepresentation claims must fail.

### *Fraud*

Irwin asserts a common law fraud claim. In Florida, the essential elements needed for a fraud claim are: (1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induce another's reliance; and (4) consequent injury by the other party acting in reliance on the representation. *Lopez-Infante v. Union*

*Cent. Life Ins. Co*, 809 So. 2d 13, 14 (Fla. 3d DCA 2002). Again, Irwin has not shown that he relied on Walker's statements. The record reveals that Irwin did not believe any of Walker's statements. Thus, Irwin fails to state a fraud claim.

### *Tortious Interference With Employment Contract*

Irwin contends that Walker's actions interfered with his employment contract. (Irwin's Resp. in Opp'n to Mot. to Dismiss at 20). "The elements of a cause of action for tortious interference with a contractual relationship are: (1) The existence of a contract, (2) The Defendant's knowledge of the contract, (3) The Defendant's intentional procurement of the contract breach, (4) The absence of any justification or privilege, (5) Damages resulting from the breach." *Fla. Tel. Corp. v. Essig*, 468 So. 2d 543, 544 (Fla. 5th DCA 1985). Even if Irwin did not have an established employment contract, the existence of negotiations with an employer leading to an employment contract is sufficient for a cause of action. *Landry v. Hornstein*, 462 So. 2d 844, 846 (Fla. 3d DCA) (stating that the business relationship need not to be evidenced by an enforceable contract, if the negotiations had progressed beyond a point where the transaction would have been consumed if the defendant had not interfered). Irwin cannot show he had a valid employment contract or that he was in negotiations with an employer that would lead to an employment contract. He filed his first claim with the USDOE-OCR on July 18, 2006, (Second Am. Compl. ¶ 181), which is well after Irwin failed to submit an application for FIU's "GEAR UP" program and was subsequently not rehired. Therefore, Irwin cannot assert the existence of a contract. Thus, Irwin cannot bring a cause of action under tortious interference with an employment contract.

### *Intentional Infliction of Emotional Distress*

Irwin asserts a claim for intentional infliction of emotional distress. (Irwin's Resp. in Opp'n to Mot. to Dismiss at 20). The essential elements needed to assert a claim for intentional infliction

of emotional distress are:

> (1) [t]he wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that the emotional distress would likely result;
> (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community;
> (3) the conduct caused emotion [sic] distress;
> (4) and the emotional distress was severe.

*LeGrande v. Emmanuel*, 889 So. 2d 991, 995 (Fla. 3d DCA 2004).

The *LeGrande* court further analyzed the meaning of outrageous, choosing to apply the Restatement of Torts definition: "conduct as that which is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *LeGrande,* 889 So. 2d at 995 (quoting Restatement 2d of Torts, § 46 (1965). While Irwin might be very offended with Walker's actions and statements, his actions and comments are not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. Walker provided an unofficial investigation when he under not obligation and instructed Irwin how to seek a reconsideration of his findings. Since Irwin cannot demonstrate that Walker's behavior was outrageous, he fails to assert an intentional infliction of emotional distress claim.

### *Civil Conspiracy*

Finally, Irwin asserts that Walker engaged in civil conspiracy. (Irwin's Resp. in Opp'n to Mot. to Dismiss at 20). "The elements that a plaintiff must allege for a conspiracy claim are that (1) two or more parties (2) agree (3) to commit an unlawful act." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007). Irwin did not show that Walker committed an unlawful act, much less that he agreed to do so. As stated above, Walker had discretion to decide wether to grant

Irwin a waiver of the filing deadline for his complaint. Therefore, this claim fails as well.

### C. Declaratory Judgment

In his second amended complaint, Irwin seeks declaratory relief. (Irwin's Second Am. Compl. ¶ 538). Declaratory judgment is only appropriate if Irwin asserts a *prima facie* case for his claims. The district court must first have a jurisdictional basis in order to provide declaratory relief. The Declaratory Judgment Act states:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201 (a).

The Declaratory Judgment Act, standing alone, does not confer jurisdictional power upon the court. The analysis for whether there is a "case or controversy" for declaratory judgment is similar to the "case and controversy" requirement under Article III of the Constitution. *Emory v. Peller,* 756 F.2d 1547, 1552 (11th Cir. 1985). The district court must be able to assert original and independent jurisdiction over the case in order to provide declaratory relief. The *Emory* court stated: "That is, under the facts alleged, there must be a substantial continuing controversy between parties having adverse legal interests." *Id*. at 1552. Since Irwin has failed to establish a *prima facie* case, the court lacks the original and independent jurisdiction necessary to provide declaratory relief.

### IV. CONCLUSION

For the reasons set forth above, Defendant Walker's Motion to Dismiss [D.E. 268] is granted.

**DONE AND ORDERED** in Miami, Florida, this 25th day of February 2009.

*[signature: Marcia G. Cooke]*

MARCIA G. COOKE
United States District Judge

cc:
Honorable Ted E. Bandstra
All counsel of record
Ralph Irwin, *pro se* Plaintiff